BUTTERS *v.* BUTTERS.

1. JUDICIAL SALES—SETTING ASIDE—CHANCERY JURISDICTION.

   A court of chancery has inherent power to set aside sales made by its order, whether the property is bid in by a party to the suit or by a stranger.

2. SAME—CHANCERY SALES—PRACTICE.

   Chancery practice requires every sale to be reported to the court and an order confirming it.

3. SAME—SETTING ASIDE—REMEDY.

   Where it is sought to vacate an order confirming a chancery sale and to obtain a resale of the property, the manner of bringing a grievance to the attention of the court is not of particular importance so long as new rights have not intervened and the original parties to the suit and the purchaser have notice and opportunity to be heard.

4. SAME—PETITION—SUFFICIENCY.

   Where, on a petition to open a chancery sale, an affidavit of the non-residence of the purchaser was made, an order for his appearance was made and published, and it appears that he had notice of the proceeding, no reason appears to deny the power of the court to determine the matter presented by the petition upon the merits, if complainant was within the jurisdiction of the court.

5. JUDGMENT—RES JUDICATA—DECISION NOT ON MERITS.

   A former adjudication of the matters put in issue by an original bill to set aside a chancery foreclosure sale does not appear where the former proceeding was by petition in the foreclosure suit which was dismissed because not the proper remedy.

6. SAME—MATTERS CONCLUDED.

   On a bill to set aside a chancery foreclosure sale, filed by the divorced wife of the mortgagor, complainant's claims of homestead rights in one of the lots, and of a right to have the other first sold, do not commend themselves to the court, where such claims were not presented in the foreclosure suit, and complainant is claiming rights based upon a deed subsequently given her by her husband in settlement of their property rights.

7. Mortgages—Foreclosure—Sale — Several Parcels — Separate Sale—Necessity.

Whether Act No. 200, Pub. Acts 1899, requires lands sold under the usual decrees made by courts of chancery to be sold in parcels, will not be determined in a case in which it appears that though two lots were sold as one parcel, and that there were two houses and a barn thereon, one of the houses stood upon both lots, and a portion of one of the lots had been otherwise used with the other lot.

8. Same—Commissioner's Deed—Filing—Delay—Effect.

A chancery foreclosure sale will not be set aside because the commissioner's deed was not filed in the office of the register of deeds within 20 days, as required by Act No. 200, Pub. Acts 1899, since the files and records in the office of the register in chancery furnish the most complete information upon the subject.

9. Same—Collusive Foreclosure—Evidence—Sufficiency.

On a bill by a divorced wife to set aside a chancery foreclosure sale of lands upon which she had joined with her husband in giving a mortgage, evidence examined, and *held*, not to show such collusion between the husband and his brother, who purchased at the sale, as would justify setting aside the sale and allowing the complainant to redeem.

Appeal from Wayne; Donovan, J. Submitted January 8, 1908. (Docket No. 11.) Decided June 27, 1908.

Bill by Janet Butters against George Butters and Adam Butters to set aside a sale under foreclosure proceedings. From a decree dismissing the bill, complainant appeals. Affirmed.

*Charles C. Stewart* (*Ronald Kelly* and *William S. Thomas*, of counsel), for complainant.

*Henry C. Walters*, for defendant George Butters.

The bill was filed in December, 1905, or January, 1906, to set aside a sale of premises made in foreclosure proceedings under a decree of July 1, 1902. The sale took place September 13, 1902. The grounds of relief stated are (1) that the premises should have been, and were not,

sold in parcels; (2) that the commissioner's deed was not recorded until after the statutory period of redemption had expired. It is prayed also that the commissioner's deed may be held to operate as an assignment of the mortgage and the decree of foreclosure, that an accounting of the rents and profits of the real estate may be taken, and that after such accounting a decree be made for a sale of the premises, this bill be treated as a bill to redeem, and if complainant pays the amount found to be due she may be subrogated to the rights of the mortgagee and authorized to sell one of the parcels to reimburse herself under a certain agreement made with defendant Adam Butters. Defendants have filed separate answers and defendant George Butters also filed a plea of former adjudication of all matters now put in issue. Adam Butters is the husband of complainant, George Butters is Adam's brother. In December, 1895, Adam owned lots numbered 264 and 265, at the corner of Magnolia street and Fourteenth avenue, in the city of Detroit. Lot 264, as occupied, encroached, in fact, upon lot 265, the house thereon standing partly upon lot 265. The mortgage in question was executed by Adam and complainant, his wife, December 23, 1895, conveyed both parcels of land by legal description, and it secured payment of $2,000 in two years and interest at six per cent. The mortgagors were, with their children, then occupying the parcel known as lot 264. The foreclosure bill was filed October 7, 1901, the mortgagors were made defendants and were served with process. Complainant appeared by her solicitor, did not answer, and the bill was taken as confessed. The property was sold as one parcel to defendant George Butters, who was a judgment creditor of his brother and had levied upon the mortgaged premises, for $2,253.71, which was the amount decreed to be due. He was represented at the sale (he was not present, and is resident in Canada) by his attorney, to whom manual delivery of the commissioner's deed was made. The deed was not recorded in the office of the register of deeds un-

til March 23, 1903. During the period allowed by law
for redemption, complainant, by her solicitor, visited the
office of the register of deeds, made inquiry and was in-
formed that the deed was not a matter of record at the
office. No tender was made. She never proposed to re-
deem more than lot 264. Later (July 16, 1903), com-
plainant filed a petition in the foreclosure suit to set aside
the sale, upon the ground that the property should have
been sold in parcels, that the deed was not recorded in
due season, and that there was fraud and collusion on the
part of defendants to deprive her of rights. There was
an affidavit of the non-residence of George Butters, an
order for his appearance was made and was published.
He did not appear except specially to move to set aside
an order setting aside the sale. Relief was finally denied
October 26, 1905. Whatever force and effect the order
dismissing the petition had, it still has; it has not been
set aside. When the mortgage was executed, lot 265 was
worth, it is claimed, $4,500 and lot 264, $2,500, and that
complainant was induced to sign the mortgage on the
representation and understanding that in case a fore-
closure occurred lot 265 must be first sold. In October,
1901, complainant filed her bill against her husband to
obtain separate maintenance and after a contest a decision
in her favor was made, on or about November 6, 1902,
by which she was, among other things, given lot 264,
subject to $1,000 of the incumbrance. Negotiations be-
tween the parties ensued, resulting in a settlement, made
November 17, 1902, by the terms of which lot 264 was to
be and was deeded to complainant, and she released to
Adam her dower right in lot 265, Adam covenanting to
pay and discharge all liens, including the mortgage, upon
lot 264. The suit for separate maintenance was discon-
tinued, no decree having been entered. One of the in-
struments made and signed at this time is here set out:

"This indenture, made this seventeenth day of Novem-
ber, 1902, between Adam Butters and Janet Butters, both
of Detroit, Michigan, witnesseth, that whereas said par-

ties in pursuance of an agreement of settlement between them, have this day exchanged deeds, whereby the fee of lot 264, private claim 726, is conveyed to said Janet Butters, and lot 265 of the same subdivision is conveyed to said Adam Butters, free of dower of the part of said Janet Butters, and whereas, the said parties have agreed that it is desirable that said lots be held together and not sold separately, or without the consent of both parties, now, therefore, the said parties hereby mutually covenant and agree, each with the other, that neither will without the other's consent in writing, at any time during their respective lives, or before the death of one or the other, sell or offer for sale either of said lots, without first giving the other of said parties the opportunity to purchase the same upon the same terms, it is further agreed as a part of the settlement above referred to, that in case the said Adam Butters shall fail to pay the interest and principal of the mortgage and lien referred to in the annexed agreement, the said Janet Butters, upon making any payments on account thereof, shall be deemed subrogated to all the rights of said mortgagee against said Adam Butters.

. "In witness whereof, said parties have signed this agreement, the day and year first above written."

It is asserted by Adam, and denied by complainant, that a part of their understanding and agreement was that marital relations were to be resumed. Complainant charged that her husband, proposing and endeavoring to defraud her, enlisted his brother's aid, and that the judgment procured by George against Adam, the levy, the sale of the property in a single parcel, are events in the collusive undertaking. Within six months after the sale, complainant saw George Butters and without success sought an arrangement which would permit her to mortgage for $1,000, and so redeem, lot 264 from the foreclosure. Adam, after deeding the property to his wife, collected rents from lot 264 and, for a time, sent them to complainant. Refusing then, or neglecting, to send them, she appointed an agent who notified the tenant to thereafter pay him the rent. It was claimed by the tenant, when demand was next made for rent, that Adam had forbidden payment to the agent. Summary proceedings

to oust the tenant followed.  From a judgment of ouster, an appeal was taken to the circuit court where the judgment was affirmed.  It was after Adam had refused to send her the rent money that complainant interviewed George Butters, showed him the deed from her husband, and asked him to permit her to burden her property as has been stated.  It was after his refusal of her request that she arranged for a loan from a person in Detroit, who upon examination failed to find the commissioner's deed recorded.  He wrote to George Butters about the matter, after which the deed was found and recorded.  It was not proposed to redeem all of the property, but lot 264 only.  Upon learning the facts, the proposed lender of the money was of opinion that the deed was void.

OSTRANDER, J. (*after stating the facts*).  As the record before us is understood, the petition (it seems also to have been called a bill) of complainant to set aside the foreclosure sale contained, in substance, the same averments found in the bill now filed.  It was answered by Adam Butters.  George Butters was made a party and being then, and now, a resident of Canada, an order for his appearance was made and duly published and he appeared and moved to dismiss the petition upon the ground that an original bill should have been filed, since the purchaser at the foreclosure sale was not a party to the foreclosure suit.  The order made in that matter, dated October 23, 1905, reads:

"This matter came on to be heard on application to dismiss the petition filed by the defendant, Janet Butters, on the 16th day of July, 1903, to set aside the foreclosure sale under the mortgage referred to in the complainant's bill of complaint, had on the 13th day of September, 1902, and all the persons interested in said application being present in court and represented by their respective counsel, and the court having heard the arguments of said counsel; ordered that the said petition be and it hereby is, dismissed, without costs."

Counsel for Mrs. Butters in that proceeding testified

in the case at bar that they were convinced that they had mistaken their remedy and supposed an order would be entered so stating. It would appear that the case of *Crawford* v. *Tuller*, 35 Mich. 57, was regarded as decisive of the question. It appears, also, that the complainant in the foreclosure suit was beyond the jurisdiction of the court and she had the money paid by the purchaser at the foreclosure sale. See, also, *Bending* v. *Auditor General*, 137 Mich. 500; *Jewett* v. *Morris*, 41 Mich. 689. It will be noticed that in all of these cases the decree was attacked and sought to be set aside. In the case at bar, the decree is not attacked. A court of chancery has inherent power to set aside sales made by its order whether the property is bid in by a party to the suit or by a stranger. Indeed, the practice requires every sale to be reported to the court and an order confirming it. And if it is sought to vacate a confirming order and to obtain a resale of property, the manner of bringing a grievance to the attention of the court is not of particular importance so long as new rights have not intervened and the original parties to the suit and the purchaser have notice and opportunity to be heard. In the matter of the petition to open this sale, an affidavit of the non-residence of the purchaser was made, an order for his appearance was made and published, and that he had notice of the proceeding is evident. No more has been done in the pending case. There does not appear to be any reason to deny the power of the court to determine the matter presented by the petition upon the merits, if complainant was within the jurisdiction of the court. But if she was not, and if that was a ground for refusing relief, it is singular that, having now pursued the method of filing an original bill, the complainant in the foreclosure suit should not be made a party defendant. We shall assume that the matter of the petition to set aside the sale was not determined on the merits and that the plea was properly overruled.

The case affords abundant evidence of the wisdom of

the rules which require parties to litigation to use the opportunities afforded them to assert their rights, to discover and promptly inform the courts of irregularities. We are not impressed with the testimony introduced to show that when the mortgage foreclosure was begun, complainant had homestead rights in lot 264. She is now asserting rights based upon her deed of the lot. But if she claimed such rights she should have presented the claim in the foreclosure case and this is true, also, of her right, if she had it, to have lot 265 first sold to satisfy the mortgage. Before and during the period of the foreclosure proceeding, complainant and her husband were adversaries. She sought to have allowed to her a portion of this property. Lot 264 was awarded her, subject to a lien of $1,000. Her divorce suit was pending in the same court which had jurisdiction of the foreclosure suit. It does not appear that the judge who allowed her alimony had his attention called to the fact that a sale of the premises occurred two months earlier. The purchaser, a stranger to the foreclosure suit, had bid in the property and paid the mortgage indebtedness. And complainant did not accept the provision made for her by the court. Instead, she accepted a deed from her husband of lot 264 and his covenant to pay the liens thereon. Both her deed and her husband's separate undertaking recited the fact that George Butters was then the lien holder, and that both lots were subject to these incumbrances. Becoming satisfied later that her husband did not propose to protect her, she set about securing lot 264 discharged from the incumbrances, first by application to George, later by borrowing money to redeem her own lot from the foreclosure sale. It does not appear that she ever intended to redeem lot 264 from the levy.

It is contended that the sale was void. We need not inquire whether Act No. 200, Pub. Acts 1899, requires lands sold under the usual decrees made by courts of chancery to be sold in parcels, making the decisions of this court in *Lee* v. *Mason*, 10 Mich. 403; *Udell* v. *Kahn*.

31 Mich. 195, applicable to such sales, because it does not appear that if the sale had been made in a statutory foreclosure proceeding it would have been void. It is true that there are two lots and two houses and a barn, but one house stands upon both lots, and a portion of lot 265 has been otherwise used with lot 264. Undoubtedly the court might have made a subdivision of the property and provided in the decree for a sale of each subdivision. It did not do so and was not asked to do so. Nor was the court in the divorce proceeding asked to make boundaries of the property, although in the decision made the description was not inserted. The agreement, herein set out, made after the sale, indicates the desirability of a single ownership and holding of the property. Counsel for complainant ask in the brief that defendant George Butters be required to deed to complainant lot 264 as occupied, she paying for a portion of lot 265 at a price to be fixed. When the property was sold, both houses were tenanted. The testimony tends to prove that the conditions were discovered on the day of the sale and that in view of them the commissioner sold the property as one parcel.

The deed, by inadvertence, was not recorded within the period of redemption, and it is contended that this fact and the provisions of Act No. 200, Pub. Acts 1899, bring the case within the rule of *Doyle* v. *Howard*, 16 Mich. 261. The reasons given in the opinion in that case for holding the provisions of the statute to be mandatory apply, some of them, with equal force in case of a chancery foreclosure. But the principal and controlling reasons do not apply. Foreclosure proceedings by advertisement are confined to cases in which the mortgage contains a power of sale. The proceedings are wholly ex parte and non-judicial. The office of the register of deeds may be the only place where an interested person may learn whether a sale has been made and of the terms thereof. A chancery foreclosure is a judicial proceeding. There is

other written evidence of the sale than that afforded by
the deed.   The files and records in the office of the register
in chancery furnish the most complete information upon
the subject.   Judicial confirmation of the sale is required
and this may be denied after the deed has been filed with
the register in obedience to the statute.   *Trombley* v.
*Klersy*, 147 Mich. 370.   Parties to the suit who have been
served with the process of the court are permitted and
expected to file objections to the report of sale and bring
them to the attention of the court.   It is not probable
that anyone would attempt to redeem from such a sale
without acquiring the knowledge disclosed by the record
in the foreclosure suit.   And one desiring and having the
right to redeem, finding no deed of record and unable to
reach the accredited purchaser, could protect himself by
the information easily accessible, either by a deposit of
the necessary amount, or by a proceeding in the court
having jurisdiction of the matter.   The statute procedure
should be followed and it is unnecessary to indicate here
the consequences of disobeying it further than this, that
one who is a party to the foreclosure suit, who has been
neither deceived into inaction nor prevented from redeem-
ing, may not rely upon such disobedience for the purpose
of securing a resale of the property.   In saying this, we
necessarily decline to apply the rule of the case cited to
chancery foreclosures.   We are of opinion that we have
no authority to set aside the sale either because the prop-
erty was not sold in parcels or because the deed was not
filed in the office of the register of deeds.

As to the alleged collusion of Adam and George But-
ters.   The testimony does not lead to the conclusion that
defendant Adam Butters was not indebted to his brother
George, or that the judgment, the basis of the levy, was
not regular and legally effective.   His good faith is not
inconsistent with regard for, reliance upon, and trust in,
his brother.   It is probable that Adam would prefer that
his brother should secure himself rather than that his
wife should succeed in securing a part of the property.

His conduct in dealing with his wife, as it is disclosed by the record, warrants the statement.

The land, all of it, came to Adam from his father, as did the dwelling on lot 265. He is, and for years has been, employed as an engineer at a salary of more than $60 a month. He has no other property. If the domestic problem were eliminated, it is clear that as such matters are usually conducted there need have been no foreclosure of the mortgage. The property was abundant security for the debt, and the income of the husband and the rent of one of the houses furnished money to pay interest. We may assume that if the family relations had remained pleasant, the foreclosure would not have taken place. We may assume, also, that the husband was at fault and the proceeding begun by the wife was a meritorious one. But, as has been pointed out, the debts of the husband and the demands of the wife against the property rendered the value of his resulting equity wholly uncertain. Unless his debts could be again secured, which would have required the consent of complainant, he could not save the property. It does not appear that complainant ever proposed joint action in this behalf. A carefully studied effort on her part to avoid the use of means calculated to secure for herself a portion of the estate could not have been more successful in defeating what the court is now asked to bring about. How she expected her husband to perform the covenant she accepted from him with her deed of lot 264, is not disclosed. He could have performed it by securing the money, if that was possible, as a loan upon a portion of lot 265. Assuming that lot 265, as occupied, is worth $4,500, there would have remained to him an interest in the property worth about $1,000 to be secured only by payment of an annual interest charge of more than $200 and an eventual payment of the principal, or sale of the premises. Complainant, by the same means, would have received premises worth $2,500. It may be said that the legal obligation of the husband required him to attempt to

pursue the course suggested. That he did not do so is not a ground for divesting the purchaser of his title acquired at the foreclosure sale and ordering a resale of the premises.

While a reading of the record excites sympathy for complainant, it does not make out the case stated in the bill of complaint. We feel obliged to affirm the decree of the court below, with costs to defendant George Butters.

BLAIR, HOOKER, MOORE, and MCALVAY, JJ., concurred.