## THE GOTTSCHALK COMPANY OF BALTIMORE CITY, Mortgagee,

*vs.*

## MEYER SAMUELSON.

### J. HENRY THOMAS, Trustee,

*vs.*

## MEYER SAMUELSON.

*Sales in equity: ratification; exceptions; rescission; burden of proof. Title: to real estate; projections on street; indefinite streets.*

Where a sale has been ratified, after due publication in accordance with established practice of courts of equity, the facts relied on must be very strong and thoroughly established in order to have said sale set aside.                    p. 543

But when the Court can see that injustice would be done by compelling the purchaser to take the property, it has the power to rescind if the proceeds are still within its control, provided the purchaser has not by his conduct or neglect deprived himself of the right to relief.                    p. 544

The burden of proof is upon the exceptant to prove the facts upon which he relies for such relief.                    p. 544

Where property in Baltimore City sold at a trustees' sale appeared to project a little over the building line, and the ratification of the sale was objected to on the ground that the trustees could not therefore give a good title to the whole lot, it was: *Held,* that such objection was not sufficient to warrant rescinding the order, when it appeared that the street was one of the oldest in the city, which had never been dedicated and whose lines had never been accurately located or run, and where it was not shown that the city in such cases had ever disturbed the property because of some minor encroachments.

pp. 546-547

Where there is an exception to the ratification of a trustee's sale, on the ground of a defective title, courts, in passing upon

the question, do not decide that the title is absolutely good or bad ; but merely whether it is free from a reasonable doubt.

p. 547

*Decided May 17th, 1916.*

Two appeals in one record from the Circuit Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The causes were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Albert J. Fleischman* and *Randolph Barton, Jr.,* for the appellants.

*A. Herman Siskind* (with whom was *Alfred C. H. Smith* on the brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

J. Harry Thomas was appointed Trustee under a petition filed by The Gottschalk Company of Baltimore City to sell certain leasehold property, situated at the corner of Exeter and Lexington streets in said city, mentioned and described in a mortgage held by The Gottschalk Company.

The trustee sold the property unto Meyer Samuelson, the appellee, and reported the sale to the Circuit Court of Baltimore City, upon which report a *nisi* order was passed and published, and no exceptions having been filed to the report of sales within the time named in the order, it was finally ratified and confirmed on the day following the last day in which exceptions were to be filed. Later on the same day, the appellee Samuelson filed exceptions to the ratification of the sale so made by the trustee. The ground of the exception was that the trustee could not convey unto him a marketable title to said property because, as alleged in the exceptions, "parts of the improvements on said property are situated on (the bed of) Exeter street," in and to which the trustee could not convey unto the purchaser a marketable title.

The trustee answered, denying the appellee's right to have his exceptions considered by the Court, inasmuch as they were not filed **within the time limited** for the filing of exceptions by the *nisi* order and before the final ratification of the sale; and also denying that any part of said improvements were upon the bed of Exeter street, but if so, that said fact did not create such a defect in the title as to warrant the rescission of final order and the setting aside of the sale.

The Court, however, held otherwise, and passed an order rescinding the final order and setting aside the sale. From this order of the Court both the trustee and the mortgagee appealed. The two appeals, however, were heard together and both of them will be passed upon in this opinion.

We will first consider the question as to the right of the appellee to have considered his exceptions filed after the final ratification of the sale.

In *Brown* v. *Gilmor,* 8 Md. 326, our predecessors said that "public policy and justice to parties interested require that the ratification of judicial sales by courts having jurisdiction over the same should be final and conclusive, unless irregularly made by the court, or unless the purchaser was prevented by misrepresentation, surprise or fraud, from making his objection to the ratification in due time; and it must further appear that such misrepresentation, surprise or fraud resulted from some act or conduct upon the part of the trustee or on the part of those interested in the proceedings."

This Court, in the recent case of *Forest Lake Cemetery* v. *Baker,* 113 Md. 536, after quoting from *Brown* v. *Gilmor, supra,* said, speaking through Judge Thomas, that "this rule, as applicable to a case where the proceeds of the sale are still within the control of the Court, is more accurately stated by Judge Boyd in the later case of *Connaughton* v. *Bernard,* 84 Md. 590, where it is said: 'where a sale has been ratified, after publication of the order *nisi* in accordance with the established practice of Courts of Equity, the facts relied on by one seeking to have the sale set aside must be very clearly established and must be of such character as strongly appeal to the conscience of the Court. But when

the Court can see that injustice will be done a purchaser by compelling him to take the property, it has the power to rescind the order of ratification, if the proceeds of sale are still within its control, provided the purchaser has not by his conduct or neglect deprived himself of the right to relief.' "

After making this statement of the law, JUDGE BOYD in that case said: "we will therefore inquire into the circumstances surrounding this case to ascertain whether the appellant should be relieved of the purchase made by his intestate."

Therefore, following the decision in *Connaughton* v. *Bernard, supra,* it will be necessary for us to consider the facts and circumstances of this case in determining whether the exceptant is entitled to the relief sought, although the exceptions were filed after the final ratification of the sale. It is claimed by the exceptant that the aforesaid improvements consisting of a two-story brick storehouse and dwelling extend beyond the west line of Exeter street the distance of two feet and five inches.

The facts upon which the exceptant relies for such relief must be proven and the burden is on him to establish them. *Forest Lake Cemetery* v. *Baker, supra; Miller's Eq. Proc.* section 509; *In re Roberts* v. *Loyola Perp. Build. Assn.,* 74 Md. 1; *Haskie* v. *James,* 75 Md. 569.

The facts as disclosed by the record and upon which the decision in this case depend are substantially as follows: The property involved is in one of the oldest sections of Baltimore City. It at one time formed a part of "Jonestown," an addition to Baltimore Town. Exeter street was laid out and opened in 1782 by the owners of the lot through which it was opened. The land for the bed of the street was never condemned and there is no record of its location. There is, however, some evidence in the record that its original width was 53 feet 9 inches, although as now used it does not exceed 51 feet 3/4 of an inch, at any point between Fayette and Lexington streets. The houses on the west side of the street between Lexington and Fayette streets are built upon no fixed and established line. Some of the

houses are so much as two or three feet further out than others, but without an established line of the street, it can not be said that such houses extend over the line of the street, or that they encroach upon said street, for it may be that the other houses are back from the line of the street. The line of the street must be first determined before it can be said with certainty that the improvements upon the lot mentioned in these proceedings encroach upon the street. Mr. Coonan, the present City Surveyor, in his testimony, says: "He does not think it possible to ascertain the true lines of the street either on the East or West Side," and gives his reasons therefor. He also stated "he was familiar with the old surveys of the old parts of Baltimore and that in such sections of the city encroachments are usual, and it was not unusual to find houses setting back from the line." He was then asked, "Are you familiar with the usage and practice of the city authorities in regard to the supposed encroachments? Yes, sir; in a way. What is it? Generally they let them alone; the city authorities do not bother them; if they do anything at all it is more to help the persons who encroach than to disturb them. Do you know of any case that has come to your knowledge in the old parts of Baltimore where they have compelled property owners to move back? I know of no case; but I do know of cases where they have compelled them to set back after the houses were torn down."

Mr. Atwood, when produced by the exceptant, testified that he was a member of the firm of S. J. Martenet & Co., surveyors, and that some years ago one of the firm's engineers under their supervision made a survey and plat of the property involved in these proceedings and when asked how he arrived at the lines he said: "Exeter street is one of the oldest streets of Baltimore City. The lines of those old streets are quite difficult to ascertain, because of lack of proper regard to location. They are made up in the first place by establishments, to which Mr. Coonan has referred, which establishments were lines of authority and location of authority usually made by a distance or location from some mark,

which could be taken up by actual measurements for future purposes. They were also made, these lines were, by seeking out the very oldest buildings on said streets and endeavoring to reconcile conditions with them, using the old houses upon the street as a basis for the line." They are also made up by an attempt to satisfy the title distances of the property involved. In this case we had the establishments which Mr. Coonan has referred to, the establishments down at Fayette street, 55 feet, also the distance of 80 feet, 6 inches, which he referred to, to the west, and we had the plat of Hopkins and Wilson, which is not recorded in full in J. B., but a portion of it is recorded there, and there is a survey upon that portion signed by Mr. Augustus Boulden, stating that he had the original in his possession, which plat calls for the width of Exeter street to be 53 feet and 6 inches. We have that, and we located what we thought, in our opinion, was the oldest house on the street. These locations go back in our office records to about 1873, approximately forty years back, and we located the oldest buildings on the west side of Exeter street, one of which was immediately adjoining this house in question at the corner, and we have the description of the property, which we were surveying at the corner, which gave it a certain depth on the line of Lexington street, and its south line. We took these establishments, and these old positions, and we took this deed, and we laid our lines by them."

It was in this way that he ascertained the lines of the lot and at the same time the west line of the street, and by such line prolonged to Fayette street a number of the houses upon that side of the street are found encroaching upon it. In his testimony he refers to another establishment, the one to which Mr. Coonan referred in his testimony, and said, "that they did not use that establishment because the projection of that line would have made an absolutely unreasonable line for the street, but adopted the one that conformed more nearly to the general outline of the streets as it was then used."

The method adopted by Mr. Atwood in ascertaining the line of the west side of Exeter street might have been and probably was the best that could have been devised at such time, but when we consider the many assumed facts upon which the correctness of this line depended, there was, we think, no assurance that the line so laid down was the exact west line of Exeter street opened one hundred and thirty-four years ago, with no record of its location in existence. This evidence, we think, does not sufficiently establish the fact that the aforesaid improvements extend over the line and encroach upon the bed of the street as originally laid out to warrant us in setting aside the sale in this case. It does not meet the requirement of the rule that "the facts relied on by one seeking to have the sale set aside must be very clearly established and must be of such character as to strongly appeal to the conscience of the Court.

We may also add that courts do not in cases like the one before us undertake to pronounce with certainty that the title is either good or bad, but whether it is free from reasonable doubt. The doubt must be a rational one, and such as would induce a prudent man to hesitate about taking the title. *Stewart* v. *Kreuzer,* 127 Md. 11; *Gill* v. *Wells,* 59 Md. 492; *Herzberg* v. *Warfield,* 76 Md. 449; *Bay* v. *Posner,* 78 Md. 42; *Chew* v. *Tome,* 93 Md. 244; *Erdman* v. *Corse,* 87 Md. 506; *Rother* v. *Sharp St. Station,* 85 Md. 528.

The doubt in this case does not, we think, measure up to that importance, and consequently the sale should not be set aside.

The order or decree appealed from will be reversed, and the case remanded.

*Order or decree reversed, with costs, and case remanded.*