### Sullivan v. Wright, et al.

#### (Decided November 16, 1923.)

## Appeal from Clark Circuit Court.

1. **Liens—Evidence Held to Prove Misrepresentation by Auctioneer as to Property Being Sold.**—On purchaser's petition, in lien foreclosure action, to have the sale set aside on the ground that he was induced to bid by auctioneer's misrepresentation that the property being sold was a certain house and lot, where, in fact, it was another lot on, which there was no house, evidence held to prove such misrepresentation.

2. **Liens—Evidence Held to Prove Purchaser's Reliance on Auctioneer's Misrepresentation.**—On purchaser's petition in lien foreclosure action to have the sale set aside on the ground that he was induced to bid by auctioneer's misrepresentation that the property being sold was a certain house and lot, where, in fact, it was another lot on which there was no house, evidence that purchaser bid more than four times the value of the lot being sold held to prove that he relied on the auctioneer's misrepresentation.

3. **Judicial Sales—Where Purchaser Relied on Auctioneer's Misrepresentation, Rule of Caveat Emptor does Not Apply.**—Sale to purchaser who bid more than four times the value of the lot being sold, in reliance on auctioneer's misrepresentation that the property being sold was another lot on which there was a house, will be set aside on purchaser's petition following confirmation of sale but during the same term; the rule of caveat emptor being inapplicable in such cases.

4. **Judicial Sales—Doctrine of Caveat Emptor Applicable Generally.**—Generally the doctrine of caveat emptor is applicable to judicial sales.

5. **Judicial Sales—Chancellor Empowered to Set Aside Order of Confirmation.**—If facts authorizing a setting aside of the sale are called to the chancellor's attention, by exceptions or otherwise,

during the term at which the sale is reported and at a time when it is within his power to correct any injustice, it is his duty to consider such exceptions and, if necessary, set aside order of confirmation already made.

REDWINE & REDWINE for appellant.

HARVEY T. LISLE and G. F. WYCOFF for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

In 1921 there was pending in the Clark circuit court an action by A. H. Hampton's Administrator v. Wright, et al., wherein the plaintiff was asserting a lien on a small lot of ground in the edge of Winchester or adjacent to the city.

On the 23rd of September, 1921, the court directed a sale of that lot, and accordingly on the 24th of October the master commissioner sold the same. Appellant, John L. Sullivan, became the purchaser at that sale at the price of $455; the sale was reported to the December term of the court and was thereafter during that term confirmed by an order.

After the confirmation and during the term, and before the purchaser learned the facts hereinafter referred to, presumably under some orders of the court, he paid the purchase money bond to the master commissioner, and that official made him a deed, but before the expiration of that term the purchaser filed in that action a pleading, called a petition, wherein he alleged the facts we have stated, and in addition that after receiving such deed, and when he had taken steps to get possession of the property which he thought he had bought, he found that he had made a mistake as to the property he bought and that he at the time thought he had bought a house and lot, and that at the time and place of the sale it was announced by the auctioneer, who was acting for the master commissioner, that he was offering for sale a house and lot, and that it was so understood by the petitioner and the surety on his bond thereafter on that day executed, and by all persons present at the sale; that during the progress of the sale one Ogden who was present interrupted the auctioneer and asked if he was selling a house and lot and that the auctioneer said he was, and that it was "the Laura Wright house and lot."

He asked the court to set aside the order confirming the report of sale, to cancel the deed that had been made to him, and that his money be refunded to him, and for other equitable relief.

With that pleading was filed the affidavit of five persons who were present at the sale, stating in substance that the auctioneer stated at the sale, in response to an inquiry, that it was a house and lot he was selling, and was the Laura Wright house and lot where Laura Wright at that time lived, and that they each and all understood thereby he was selling such house and lot; and that the lot which it afterwards turned out he actually sold was not worth exceeding $75.00 to $90.00 and had no house whatever upon it.

It further appeared that the lot actually described in the judgment was only appraised at $100.00 by the appraisers. The affidavit of the auctioneer states that he was under the impression that it was a house and lot he was selling, and so cried the sale.

As opposed to all this is the affidavit of the master commissioner and one other present at the sale, denying in substance that these things happened.

But we have before us the original bond executed by appellant and his bondsmen on the day of the sale, and while it now refers to the sale of a "lot on Mt. Sterling pike," it is plainly to be seen on the face of the bond that there was originally written therein the words "house and lot." And it is alleged in the pleading sworn to by appellant that the bond as originally written recited that the property sold was "a house and lot," and it is stated in the affidavit of Jesse Warner, who was appellant's surety on the sale bond, that at the time he signed the same on the day of the sale it recited that the property covered thereby was "a house and lot."

The court by its judgment denied appellant any relief and dismissed his petition, from which judgment he has appealed.

From the evidence on file, especially that of the auctioneer, corroborated clearly by the fact there was originally written in the face of the sale bond that it represented the purchase price of a house and lot, we are impelled to the conclusion that the misrepresentation alleged to have been made by the auctioneer was in fact made, and that appellant relied upon that misrepresentation is apparent from the fact that he apparently bid

$455.00 for a lot which was worth at the time not exceeding $90.00, and which was appraised for the purposes of the sale at $100.00.

The questions then are: (1) May a purchaser at a judicial sale, who in reliance upon the misrepresentation of the person making the sale, bids several times what the property actually sold is worth, under the misapprehension induced by the misrepresentation that the property being sold is other and different property, be relieved from his bid? 2. Does the doctrine of *caveat emptor* interpose a barrier to the granting of such relief where the facts are presented to the chancellor at the term in which the report of sale is made, and while it is yet within his power to give the relief?

It will be noticed the misrepresentation in this case was not as to the title to the property sold, nor as to the acreage or quantity sold; but was that the property being sold was a certain house and lot occupied then by a certain individual, when in fact the judgment only authorized the sale of a different lot upon which there was no house whatever, and no occupant.

The misrepresentation was made by the auctioneer in the presence of the master commissioner. Presumably the commissioner had employed the auctioneer to cry the sale, and it must be given the same effect as if the commissioner himself had cried the sale and made the misrepresentation, for they were made in his presence, and he was in fact conducting the sale.

That any mistake or misapprehension caused in the mind of a purchaser which is created by the conduct of the officer conducting the sale is a sufficient ground for setting the same aside is well recognized by the authorities. 16 R. C. L., section 65, p. 89-90; Page v. Kress, 20 A. S. R. 504 and note; note to Norton v. Nebraska Loan & Trust Co., 37 A. S. R. 447; Hammond v. Cailleaud, 52 A. S. R. 167 and note.

The sale is conducted under the orders of the court, and any misrepresentation or misconduct by the officer conducting the sale, whether innocently made or not, is attributable in a sense to the court, and should never be permitted to work a hardship or injustice upon another.

Apparently the purchaser in this case was present at the sale by chance, and had had no opportunity to examine the pleadings in the action. It would be a wholly false conception of the equities of the situation

to require the purchaser to comply with a bid which is several times the value of the property actually sold, when he was induced by the action of the court's own officer to believe he was bidding upon an entirely different piece of property which had a residence upon it.

An analysis of the facts is convincing that the rule of *caveat emptor* has no application. At the same term at which the sale was reported appellant filed his petition setting forth the facts which had been ascertained by him for the first time since the order of confirmation. The court still had the whole matter under its control; it was within its power to set aside the order of confirmation, and, so far as this record shows, place the parties *in statu quo,* and prevent a manifest injustice to appellant.

In this situation the petition filed by appellant wherein he asked the court to set aside the order of confirmation and to set aside the sale, raised the same questions that might have been raised by him earlier in the term by filing exceptions to the report of sale before its confirmation.

While there is no doubt of the application of *caveat emptor* to judicial sales generally, and while the courts in stating its application to such sales have said that it applies *after confirmation,* and that no relief can then be granted, the real rule is that if the facts authorizing a setting aside of the sale are called to the attention of the chancellor by exceptions or otherwise during the term at which the sale is reported, and at a time when it is within his power to correct any injustice, he not only has the right and power, but it is his duty to consider such exceptions and pass upon them, and if necessary to set aside an order of confirmation already made.

That this is the true rule may be ascertained from the statement of it made in the case of Farmers Bank v. Peter, 13 Bush 591, where the court said:

"There is no warranty of title by the chancellor or the creditor, and in a case like this, where there is a judgment to enforce the mortgage, and a sale under it, the purchaser buys at his peril, and cannot complain of a want of title, unless he applies to the chancellor before the sale is completed by an order of confirmation, *or during the term in which the chancellor has the power to disregard or modify such an order.*"

It is apparent the sale was not completed at the time appellant filed his petition, and in effect entered a motion to set aside the order of confirmation for the reasons stated in his petition, and in the affidavits accompanying same. It was then within the power of the chancellor to set aside the order, to refuse to confirm the sale, to cancel the bond, to cancel the deed made to appellant and place the parties *in statu quo*. These things should have been done, for the time had not yet arrived when the maxim *caveat emptor* foreclosed appellant from relief because of the imposition innocently practiced upon him as the result of these misrepresentations.

The judgment is reversed with directions to enter a judgment as indicated.