TRAVELERS INDEMNITY COMPANY, A CORPORATION, APPELLEE, V. ARTHUR HEIM AND MELVA HEIM, HUSBAND AND WIFE, APPELLANTS, HIGH PLAINS AGRICULTURAL CREDIT CORPORATION, APPELLEE.

352 N.W.2d 921

Filed August 10, 1984.   No. 84-077.

Robert G. Simmons, Jr., of Wright, Simmons & Selzer, for appellants.

David C. Nuttleman of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellee Travelers Indemnity Company.

Mark L. Laughlin of Venteicher, Laughlin, Peterson & Lang, for appellee High Plains Agricultural Credit Corporation.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

Arthur and Melva Heim appeal the judgment of the district court for Kimball County confirming a sheriff's sale held in connection with foreclosure of a mortgage given by Heims to Travelers Indemnity Company (Travelers). We affirm.

On April 21, 1976, Heims gave their promissory note to Travelers in the amount of $400,000. As security for payment of their note, Heims also executed a real estate mortgage in favor of Travelers. Upon Heims' default in payment on the note, Travelers commenced suit on May 21, 1979, to foreclose the mortgage. A decree of foreclosure was entered on July 30, 1982. In that decree the district court found that Heims owed Travelers $580,647.30 and that Heims owed another mortgagee, High Plains Agricultural Credit Corporation, $346,712.56 on a second mortgage lien on the real estate. On April 11, 1983, the district court ordered a sale of the mortgaged real estate, and a sheriff's sale was held on June 17. At the June 17 sale three farmers bid an aggregate of $371,000, and High Plains was the high bidder for the entire tract at $455,000.

Heims objected to confirmation of the sheriff's sale. After a hearing on July 7 the district court sustained Heims' objections. On July 14 the district court set aside the sheriff's sale of June 17 and ordered the property resold.

After the district court's order to resell the mortgaged premises, Heims planted winter wheat on the mortgaged real estate. The district court amended its order for resale to provide that any purchaser at the foreclosure sale would become the owner of the crops unharvested at the date of such sale.

On September 23 a second sheriff's sale was held. Approximately 10 bidders attended this sale. One individual bid $10,000 on one of the parcels, Travelers bid $450,000 on the entire mortgaged tract, and High Plains made the high bid of $455,000 for all the mortgaged real estate.

Travelers moved for confirmation, and Heims objected. On October 12 the court confirmed the sale to High Plains for $455,000. In the order the district court found "that said real property was sold for a fair and reasonable value under the circumstances and conditions of sale, and that a subsequent sale would not realize a greater amount, the Court finds that the sale

should be confirmed."

Confirmation of foreclosure sales is governed by Neb. Rev. Stat. § 25-1531 (Supp. 1983), which provides in part:

> If the court . . . shall . . . be satisfied . . . that the said property was sold for fair value, under the circumstances and conditions of the sale, or, that a subsequent sale would not realize a greater amount, the court shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and an order that the officer make the purchaser a deed of such lands and tenements.

Heims contend the trial court erred in confirming the sheriff's sale. The principal evidence to support Heims' objection to confirmation was Mrs. Heim's testimony that a wheat crop on the subject real estate would increase the value of the land between $100 and $300 per acre. Mrs. Heim also testified that the value of mineral rights for the real estate had increased due to intensified mineral activity in the area of the mortgaged premises. However, on cross-examination Mrs. Heim admitted Heims did not own all the mineral rights for the mortgaged real estate and that, after the first sheriff's sale but before the second sale, Heims executed an oil and gas lease to themselves for 99 years. Heims recorded that mineral lease.

In support of its motion for confirmation, Travelers reoffered testimony of Robert Marland, an "accredited rural appraiser" who had testified at the first confirmation hearing held on July 7. Marland had appraised Heims' real estate at $383,490. Because his appraisal was completed before the winter wheat crop was planted, Marland's appraisal did not include any attributory value regarding the wheat crop and did not include any valuation for the mineral rights on the mortgaged real estate.

A real estate foreclosure action is an action in equity triable on appeal de novo. See *Tilden v. Beckmann*, 203 Neb. 293, 278 N.W.2d 581 (1979). However, when the evidence is in conflict, this court will consider that the trial court heard the witnesses and had an opportunity to observe their demeanor.

Other than Mrs. Heim's testimony that the property was worth more than the high bids at the two sheriff's sales, there is

no satisfactory evidence that the real estate has not been sold for its fair value under the circumstances and conditions of the sale, as required by § 25-1531. Further, there is no evidence that a subsequent sale would realize a greater amount. In this case the real estate has been sold twice at public sale for the same figure—$455,000. In *Lincoln Joint Stock Land Bank v. Fuller*, 132 Neb. 677, 273 N.W. 14 (1937), we said:

> We are convinced that the results obtained from three sales of this property furnish a fair and just criterion of the value of the property upon which the court might act. It is at least sufficient to present an issuable fact as against the opinion evidence contained in the affidavits offered in evidence by the appellants.

*Id.* at 681, 273 N.W. at 17.

> An order confirming a judicial sale under a decree foreclosing a mortgage on real estate will not be reversed on appeal for inadequacy of price, when there was no fraud or shocking discrepancy between value and the sale price, and where there is no satisfactory evidence that a higher bid could be obtained in the event of another sale.

*Nebraska Federal Savings & Loan Assn. v. Patterson*, 212 Neb. 29, 30, 321 N.W.2d 71, 72 (1982).

The court's reasoning in *Lincoln Joint Stock Land Bank, supra* at 682, 273 N.W. at 17, is equally applicable here.

> While opinion evidence is almost always necessary in fixing the market value of land, it is not always controlling. The trial court apparently gave it little weight in the case at bar when the results of [two] public auctions of the land were presented to it. In this we believe the trial court was justified. Opinion evidence must give way to facts, and, after [two] sales, [neither] of which brought over [$455,000], it would seem that the trial court was amply justified in finding that the market value did not exceed that amount.

The trial court was probably concerned, as are we, with preserving the solemnity and stability of judicial sales. To order the property to be sold yet again where it has twice brought the same price in previous sales would impermissibly "chill" bidding and nullify solemnity and stability of judicial sales. Cf.

*Nebraska State Bank & Trust Co. v. Wright*, 213 Neb. 822, 331 N.W.2d 535 (1983).

In this case there has been no evidence adduced by Heims that a higher bid would be obtained in the event of another sale. Therefore, the district court did not err in confirming the sheriff's sale to High Plains on September 23.

After the confirmation order of September 23, Heims, on October 18, filed an application to set aside the confirmed sale. Heims contend the district court should have granted their application to set aside the second sheriff's sale, because the real estate sold was Heims' homestead and Mrs. Heim's signature on the real estate mortgage was not acknowledged. Heims' application to set aside the confirmed sale was based on § 25-1531, which provides:

> Prior to the confirmation of sale pursuant to this section, the party seeking confirmation of sale shall, except in the circumstances described in section 40-103, provide notice to the debtor informing him or her of the homestead exemption procedure available pursuant to Chapter 40, article 1. The notice shall be given by certified mailing at least ten days prior to any hearing on confirmation of sale. . . . Upon application to the court by the judgment debtor within sixty days of the confirmation of any sale confirmed pursuant to this section, such sale shall be set aside if the court finds that the party seeking confirmation of sale failed to provide notice to the judgment debtor regarding homestead exemption procedures at least ten days prior to the confirmation of sale as required by this section.

In order to qualify real estate as a homestead under Neb. Rev. Stat. § 40-101 (Cum. Supp. 1982), a homestead claimant and his family must reside in habitation on the premises. See *Schroeder v. Ely*, 161 Neb. 262, 73 N.W.2d 172 (1955). A person cannot have two homesteads, nor can he have two places either of which at his election he may claim as a homestead. See *Berggren v. Bliss*, 122 Neb. 801, 241 N.W. 544 (1932).

Heims' contention that there can be no confirmation in view of § 25-1531 depends on whether the mortgaged premises was in fact Heims' homestead. In this case Heims' house was

located on the mortgaged premises. However, Heims had moved from their Nebraska house on April 30, 1983, almost 2 months before the first sheriff's sale on June 17, 1983. Heims currently reside in a mobile home in Colorado. When they moved from Nebraska to Colorado, Heims removed all the windows and doors in their Nebraska house. All that remains is the bare structure, a shell of a house, the telephone, and a mailbox. Mrs. Heim has testified she considers the Nebraska house as her home and residence, which she visits every day, but the facts belie any claim that the Nebraska house is Heims' homestead and residence. The objective evidence indicates Heims' abandonment of the Nebraska homestead and substitution or acquisition of a Colorado homestead. Because the Nebraska house is not used by the Heims as a family residence, the Nebraska real estate does not qualify as a homestead defined by § 40-101.

The judgment of the district court is affirmed.

AFFIRMED.