TRAVELERS INDEMNITY COMPANY, A CORPORATION, APPELLEE, V.
ARTHUR HEIM AND MELVA HEIM, HUSBAND AND WIFE,
APPELLANTS, HIGH PLAINS AGRICULTURAL CREDIT
CORPORATION, APPELLEE.

388 N.W.2d 106

Filed June 6, 1986.   No. 85-398.

Robert G. Simmons, Jr., of Wright, Simmons & Selzer, for appellants.

Mark L. Laughlin of Venteicher, Laughlin, Peterson & Lang, for appellee High Plains.

David C. Nuttleman of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellee Travelers Indemnity.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Arthur and Melva Heim appeal the decision of the district court for Kimball County determining that the district court lacked jurisdiction to hear Heims' motions to declare a purchase at a sheriff's sale abandoned and to obtain an accounting. This case is another aspect of *Travelers Indemnity Co. v. Heim*, 218 Neb. 326, 352 N.W.2d 921 (1984), in which we affirmed confirmation of a sheriff's sale of Heims' real estate upon foreclosure of their mortgage granted to Travelers Indemnity Company.

A first mortgage from Heims to Travelers Indemnity Company was recorded on April 21, 1976. A second mortgage on Heims' real estate was recorded on March 23, 1977, in favor of High Plains Agricultural Credit Corporation. On May 21, 1979, Travelers commenced proceedings to foreclose its mortgage from Heims, after Heims were delinquent on their mortgage payments to Travelers. In its order of August 2, 1982, the district court found that Heims owed Travelers $580,647.30 for the debt secured by the Heim mortgage to Travelers. The district court also found that Heims owed High Plains $346,712.56 on their debt, for which Heims had given their real estate mortgage to High Plains as collateral. The district court ordered Heims' real estate to be sold due to the default in indebtedness of Heims and the proceeds from the sheriff's sale to be applied to Heims' indebtedness to Travelers and High Plains. Before September 23, 1983, Heims had planted a winter wheat crop on their real estate which was subject to the mortgages.

At the sheriff's sale held on September 23, 1983, High Plains bid $455,000 for Heims' real estate and made a downpayment of $68,250, which was 15 percent of High Plains' bid at the sheriff's sale. The sale to High Plains was confirmed by the district court on October 12, 1983, and subsequently affirmed by this court in *Travelers Indemnity Co. v. Heim, supra*. High Plains harvested a wheat crop from the real estate in 1984.

On September 11, 1984, Heims instituted the present action, alleging that High Plains had made its bid on September 23, 1983, that High Plains' purchase at the sheriff's sale was confirmed on October 12, but that High Plains' purchase price

was not paid to the sheriff until May 3, 1984. Heims claimed that High Plains did not pay the full amount of its purchase price until it became evident that the winter wheat crop was successful. As alleged by Heims, High Plains had waived and abandoned its purchase at the sheriff's sale, so that the real estate should be resold. In addition to their request for another sale, Heims prayed for an accounting regarding the wheat crop harvested from the real estate by High Plains. Heims served Travelers and High Plains with requests for admissions and interrogatories. Travelers requested a protective order pursuant to Neb. Ct. R. of Disc. 26(c)(1) (rev. 1983), requesting that Travelers not be required to answer Heims' requests and interrogatories because a final order, the order confirming sale to High Plains, had already been entered in the case. On May 9, 1985, the district court ruled that it lacked jurisdiction to declare an abandonment by High Plains regarding the foreclosure sale. The district court also held that it did not have jurisdiction to hear Heims' request for an accounting.

There are two questions raised in this appeal. The first question is whether or not a court of equity retains jurisdiction in foreclosure proceedings to determine whether a successful bidder has abandoned its purchase at a sheriff's sale. The second question is whether or not, after confirmation of a foreclosure sale affirmed upon appeal to the Supreme Court, a district court has jurisdiction to order an accounting concerning the real estate sold at the sheriff's sale.

Confirmation of a judicial sale is an indication that the sale has been made in due compliance with the provisions of the decree ordering that sale, and manifests a court's acceptance of a purchaser's offer embodied in his bid reported to the court. 47 Am. Jur. 2d *Judicial Sales* § 201 (1969). When confirmed, a judicial sale is final and complete. See *County of Lancaster v. Schwarz*, 152 Neb. 15, 39 N.W.2d 921 (1949).

Jurisdiction is the power to hear and decide a legal controversy. See *Neumeyer v. Omaha Public Power Dist.*, 188 Neb. 516, 198 N.W.2d 80 (1972). "Jurisdiction is the inherent power or authority to decide a case . . . ." *State ex rel. Bauersachs v. Williams*, 215 Neb. 757, 759, 340 N.W.2d 431, 433 (1983). " 'Where a court of equity has obtained

jurisdiction of a cause for any purpose, it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation.' " *Muller Enterprises, Inc. v. Gerber*, 180 Neb. 318, 323, 142 N.W.2d 593, 596 (1966). In *Mauzy v. Elliott*, 146 Neb. 865, 871, 22 N.W.2d 142, 146 (1946), this court held that a trial court "had jurisdiction to foreclose the mortgage and thereafter distribute the proceeds of the sale . . . ." See, also, Neb. Rev. Stat. § 25-1531 (Cum. Supp. 1984) (order for distribution of proceeds from judicial sale after foreclosure of mortgage). Thus, a court has postconfirmation jurisdiction to complete certain aspects of the sale confirmed, such as distribution of proceeds from the sale confirmed.

*First Nat. Bank v. First Trust Co.*, 145 Neb. 147, 15 N.W.2d 386 (1944), involved a partition action where the defendants filed a motion to set aside an order of confirmation, alleging the land had not been sold for fair value. In affirming the district court's vacation of the order of confirmation, we stated: " 'The district court has the right and power to vacate, set aside, amend or correct any judgment or order made by it during the same term at which it was rendered if it appears that its former judgment was the result of fraud, accident or mistake.' " *Id*. at 149, 15 N.W.2d at 387. Cf. *Enquist v. Enquist*, 146 Neb. 708, 21 N.W.2d 404 (1946), where a home was sold at judicial sale for $180. Subsequently, a motion was filed to set aside the sale, which alleged that the value of the property was in excess of $1,800. The trial court vacated the order of confirmation. In reversing we stated: " 'It is a well settled rule that the doctrine of *caveat emptor* applies to all judicial sales, subject to the qualification that the purchaser is entitled to relief on the ground of after-discovered mistake of material facts or fraud, where he is free from negligence. . . .' " *Id*. at 714, 21 N.W.2d at 407.

Other jurisdictions have recognized a court's retained jurisdiction after confirmation of a judicial sale when there are special situations which have worked an injustice unknown to the complaining party at the time of confirmation, such as fraud, accident, or mistake. See, *In re Green*, 27 N.C. App. 555, 557, 219 S.E.2d 552, 553 (1975) ("after confirmation of a

judicial sale, the purchaser becomes the equitable owner of the property, and the sale then may be set aside only for 'mistake, fraud, or collusion' "); *Myers, Treas., v. Duibley,* 94 Ohio App. 228, 114 N.E.2d 832, 838 (1952) (" ' "after confirmation of a judicial sale neither inadequacy of price, nor offers of better prices, nor anything but fraud, accident, mistake or some other cause, for which equity would avoid a like sale between private parties, will warrant a court in avoiding the confirmation of the sale or in opening the latter and receiving subsequent bids" ' "). See, also, *Sullivan v. Wright,* 201 Ky. 22, 255 S.W. 848 (1923); *Gottschalk Co. vs. Samuelson,* 128 Md. 541, 97 A. 1003 (1916); *Butters v. Butters,* 153 Mich. 153, 117 N.W. 203 (1908); 47 Am. Jur. 2d, *supra* § 352; 50 C.J.S. *Judicial Sales* § 52 d. (1947).

Having determined that a district court retains jurisdiction to hear a postconfirmation motion to vacate the sale confirmed, we must now shift our focus to an examination whether Heims' motion stated any basis to vacate the previously confirmed judicial sale. In their motion Heims alleged that High Plains "acted inequitably and waived its purchase and abandoned its rights to complete purchase at the Sheriff's sale" and that High Plains "did not give credit to [Heims] of interest on the amount of the unpaid bid, but kept its funds until May 3, 1984 earning interest thereon, and continued to charge these defendants with interest on such same funds while withheld." Neither of Heims' allegations relate to fraud, accident, or mistake affecting the sale confirmed. See *First Nat. Bank v. First Trust Co., supra.* The allegation that High Plains acted "inequitably" is not a sufficient allegation of fraud, accident, or mistake to vacate the judicial sale confirmed in this case. Cf. *Younkin v. Younkin,* 221 Neb. 134, 375 N.W.2d 894 (1985) (in a motion to vacate a dissolution decree, an allegation of general dissatisfaction with the trial court's property division and allowance of alimony was not an allegation of "good reason" or "good cause" sufficient to authorize setting aside or modifying a dissolution decree). We conclude, therefore, that Heims failed to allege a basis for vacating the sale to High Plains, a judicial sale which had been confirmed by the district court.

As far as accruing or accrued interest on Heims'

indebtedness is concerned, a "creditor is entitled to interest upon his claim up to the date of confirmation" of a judicial sale. (Syllabus of the court.) *Trompen v. Hammond*, 61 Neb. 446, 85 N.W. 436 (1901). Accrued interest on Heims' indebtedness to Travelers terminated on October 12, 1986, the date when the district court confirmed the judicial sale to High Plains. A claim for interest on Heims' indebtedness to High Plains will ultimately depend on High Plains' attempt to collect a deficiency judgment against Heims. Interest accruing as a result of dilatory conduct by High Plains in payment of the price bid at the confirmed sale may be subject to a defense by Heims that High Plains has not mitigated damages regarding accruing interest on the Heim indebtedness. Cf. *Henderson v. Joplin*, 191 Neb. 827, 217 N.W.2d 920 (1974) (plaintiff's suit for breach of employment contract; held, plaintiff had a duty to mitigate damages caused by such breach of contract). Cf., also, *Colton v. Benes*, 176 Neb. 483, 126 N.W.2d 652 (1964) (in a tort action—motor vehicle accident—plaintiff had a duty to mitigate damages and obtain reasonably appropriate medical treatment for bodily injury which was the subject of plaintiff's claim).

Therefore, although the district court erred in its determination that it had no jurisdiction to hear Heims' motion, such motion failed to allege any basis for vacating the judicial sale confirmed on October 12, 1983. A correct result will not be reversed merely because a trial court reached that correct result for an incorrect reason. See *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985).

Because Heims alleged no basis for vacating the confirmed sale, there can be no accounting concerning the unvacated sale. As expressed in *League v. Vanice*, 221 Neb. 34, 46, 374 N.W.2d 849, 857 (1985), "No cause of action proved, no accounting granted." Here, because no proper basis was alleged for vacating the confirmed sale, no accounting may be ordered.

For the foregoing reasons, therefore, the judgment of the district court is affirmed.

AFFIRMED.

BOSLAUGH and HASTINGS, JJ., concur in the result.