J. T. MILLMAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER T. DUNCAN, DECEASED, APPELLANT, V. COUNTY OF BUTLER, NEBRASKA, APPELLEE.

458 N.W.2d 207

Filed July 27, 1990.   No. 88-314.

916

Rollin R. Bailey, of Bailey, Polsky, Cada, Todd & Cope, for appellant.

Peter C. Bataillon and Edward F. Noethe, of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

On December 30, 1985, J.T. Millman, personal representative of the estate of Christopher T. Duncan, deceased, filed a wrongful death action in the district court for Butler County against the County of Butler, Nebraska. Millman filed the action under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983 & Cum. Supp. 1986). The district court concluded that it lacked subject matter jurisdiction and dismissed Millman's action; hence, this appeal.

In 1987, the Political Subdivisions Tort Claims Act was legislatively transferred, without change in any statutory language, from chapter 23, article 24, of the Revised Statutes of Nebraska (Reissue 1983, Cum. Supp. 1986 & Supp. 1987), to chapter 13, article 9, of the Revised Statutes of Nebraska (Reissue 1987), namely, Neb. Rev. Stat. §§ 13-901 to 13-926 (Reissue 1987). Consequently, references to statutory sections of the Political Subdivisions Tort Claims Act are based on the current act, §§ 13-901 et seq. (Reissue 1987).

On March 10, 1986, Millman filed an amended petition which, with some subsequent amendment, expressed a cause of action against Butler County for the county's negligent maintenance of a county road and a bridge. See § 13-912 (political subdivision's liability for a defective bridge or highway). Millman alleged that the county's negligence caused a vehicle in which Duncan was a passenger on April 21, 1984, "to run off the bridge and land upside down in the water below the bridge," where Duncan drowned. Also, Millman alleged that Butler County

was given timely notice of the claims in this suit as required by the Nebraska Political Subdivisions Tort Claims Act, and after [Butler County] failed to make a final disposition of the claim within six months of it being filed, said claim was withdrawn and this lawsuit was instituted. [Millman] has fully complied with all of the provisions of the Nebraska Political Subdivisions Tort Claims Act.

In its answer, Butler County admitted its existence as a political subdivision of the State of Nebraska and generally denied Millman's allegations. Additionally, in its answer, after alleging what is apparently a defense of assumption of risk, that is, Duncan had actual knowledge of the "alleged defect of the bridge" and "there were other safe routes which were available and known" to Duncan, Butler County asserted that "plaintiff's cause of action is barred by the statute of limitations."

As early as April 1986, the parties engaged in discovery, commencing with interrogatories to the plaintiff. The answers to those interrogatories supplied the county with information regarding the names and addresses of witnesses and the existence of documentary evidence, such as photographs and diagrams pertaining to the accident site. This information was received by the county's lawyer on April 28, 1986. On April 7, 1987, the parties mutually stipulated for, and later received, a continuance for trial. Thereafter, on July 30, 1987, the county took the deposition of Dr. Edward Post, a civil engineer with expertise in "roadside safety," apparently expertise in the field of safety engineering or construction of highways. On direct examination by the county's lawyer, Dr. Post meticulously testified about the fatal accident and supplemented his testimony with documents which he had prepared or used in his consideration of the fatal accident. On September 3, 1987, in Hollywood, Florida, Butler County obtained the deposition of Joseph R. Meyer, the driver of the pickup in which Duncan was riding when the accident occurred.

A 3-day trial commenced on October 28, 1987. During that trial, neither party offered any evidence that a tort claim was filed with Butler County. Rather, evidence related to the merits of the negligence action regarding Duncan's death. Millman

called several witnesses who collectively testified about the road-bridge condition at the accident site. Butler County presented witnesses who also testified about the accident site and its relation to Duncan's death. At the conclusion of evidence, the court took the case under advisement. Later, the court entered its order, reflecting its findings and disposition of the action: "The plaintiff has failed to offer any evidence of subject-matter jurisdiction as required by [§ 13-905; filing claim]. Accordingly, this Court lacks subject-matter jurisdiction, and this matter must be and is hereby dismissed . . . ." Millman timely filed a motion for new trial regarding the dismissal. Also, Millman requested leave to withdraw his rest in the case and offer evidence that a claim had been filed with Butler County in compliance with § 13-905. After the district court overruled Millman's motion for a new trial and denied Millman's request to reopen the case for evidence regarding the filing of the Duncan claim with Butler County, Millman appealed and contends that (1) the district court erred regarding the effect of the filing or presentment provision prescribed in § 13-905 of the Political Subdivisions Tort Claims Act and (2) the trial court should have allowed him to reopen the case for evidence regarding compliance with § 13-905. Butler County asserts that "the trial court properly dismissed the cause of action for failure to prove subject matter jurisdiction." Brief for appellee at 11. Also, Butler County argues that there was no abuse of discretion in the district court's refusing to allow Millman to reopen his case and offer evidence that the Duncan claim was filed with Butler County.

## JURISDICTIONAL QUESTION

Before we consider the district court's decision that it lacked subject matter jurisdiction, a reexamination of pertinent parts of the Nebraska Political Subdivisions Tort Claims Act is in order. Subject to specific exclusions and exemptions, see § 13-910, the Political Subdivisions Tort Claims Act provides for a Nebraska political subdivision's liability for its torts the same as a private party may be liable for torts. See § 13-903(4):

Tort claim shall mean any claim against a political subdivision for [injury and damages] caused by the

negligent or wrongful act or omission of any employee of the political subdivision . . . under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such [injury and damages].

See, also, § 13-908: "Except as otherwise provided in this act, in all suits brought under this act, the political subdivision shall be liable in the same manner, and to the same extent as a private individual under like circumstances . . . ." Cf. *Blitzkie v. State*, 228 Neb. 409, 422 N.W.2d 773 (1988) (subject to specified exemptions, the State Tort Claims Act provides for the state's liability for its torts the same as a private party may be liable for torts). Thus, as a result of the Nebraska Political Subdivisions Tort Claims Act, the defense of governmental immunity is abrogated concerning a cause of action based on a political subdivision's negligence under circumstances in which a private person would be liable for injury and damages. See, *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988) (the Nebraska Political Subdivisions Tort Claims Act reflects a limited waiver of governmental immunity); *Koepf v. County of York*, 198 Neb. 67, 251 N.W.2d 866 (1977); *Hall v. Abel Inv. Co.*, 192 Neb. 256, 219 N.W.2d 760 (1974).

In its pertinent part, § 13-905 of the Political Subdivisions Tort Claims Act states: "All tort claims under [the Political Subdivisions Tort Claims Act] shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision . . . ."

Section 13-907 provides in part: "Jurisdiction, venue, procedure, and rights of appeal in all suits brought under [the Political Subdivisions Tort Claims Act] shall be determined in the same manner as if the suits involved private individuals . . . ." The district court concluded that filing or presentment of a claim, prescribed in § 13-905, is a jurisdictional prerequisite to litigate a negligence action brought under the Political Subdivisions Tort Claims Act.

"Jurisdiction is the inherent power or authority to decide a case." *Chicago Lumber Co. v. School Dist. No. 71, supra* at 365, 417 N.W.2d at 763; *Blitzkie v. State, supra*; *Andrews v. City of Lincoln*, 224 Neb. 748, 401 N.W.2d 467 (1987); *State ex rel. Bauersachs v. Williams*, 215 Neb. 757, 340 N.W.2d 431

(1983).

Article V, § 9, of the Nebraska Constitution states: "The district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide; and the judges thereof may admit persons charged with felony to a plea of guilty and pass such sentence as may be prescribed by law."

In *Chicago Lumber Co. v. School Dist. No. 71, supra* at 365, 417 N.W.2d at 763-64, we stated: "Whether a claimant may maintain an action brought under the Political Subdivisions Tort Claims Act or, ultimately, whether a claimant may prevail in such action is a matter for adjudication by a court exercising jurisdiction in accordance with the Political Subdivisions Tort Claims Act."

Courts in several jurisdictions have considered the filing or presentment provision, frequently called a notice requirement, in a governmental tort claims act in relation to jurisdiction for adjudication of a tort action and have concluded that the filing or presentment provision is not a jurisdictional prerequisite for judicial determination of a tort action against a governmental entity or body. Regarding failure to comply with the notice requirement of Rhode Island's governmental tort claims act, the Supreme Court of Rhode Island, in *Mesolella v. City of Providence,* 508 A.2d 661 (R.I. 1986), addressed a city's argument that noncompliance precluded subject matter jurisdiction for the action in the trial court. In *Mesolella,* the court observed:

We are of the opinion that the city in the case at hand . . . confused the lack of jurisdiction over a particular action for failure to comply with the conditions precedent with a lack of jurisdiction over the class of cases to which that action belongs—blurring the distinction, as has often been done before, between the " 'appropriate exercise of power' " and the " 'absence of power.' " [Citations omitted.] The term "subject matter jurisdiction," when properly used, refers only to the court's power to hear and decide a case and not to whether a court having the power to adjudicate should exercise that power. [Citation omitted.]

508 A.2d at 665-66.

In *Vasys v. Metropolitan District Commission*, 387 Mass. 51, 438 N.E.2d 836 (1982), the trial court concluded that noncompliance with the filing or presentment provision in the Massachusetts Tort Claims Act was a jurisdictional defect under the act and dismissed a negligence action against the governmental entity. Reversing the trial court's jurisdictional ruling, the Supreme Judicial Court of Massachusetts stated:

We hold that a complaint brought under [the Massachusetts Tort Claims Act] cannot properly be dismissed for lack of subject matter jurisdiction solely because the plaintiff failed to comply with the presentment requirement of [the tort claims act]. Our conclusion is based on modern views on the doctrine of sovereign immunity [and] the broad purpose of the statute to provide an effective remedy for persons injured as a result of the negligence of governmental entities in the Commonwealth . . . .

387 Mass. at 55, 438 N.E.2d at 839.

Similar to the court in *Vasys, supra*, the Supreme Court of Wisconsin, in *Figgs v. City of Milwaukee*, 121 Wis. 2d 44, 357 N.W.2d 548 (1984), reversed a decision by a lower court, which had held that noncompliance with the filing or presentment requirements of the Wisconsin tort claims act defeated subject matter jurisdiction of the trial court, and concluded:

[S]tatutory conditions or conditions precedent have nothing to do with subject matter jurisdiction of [the trial court]. [Citations omitted.] They deal only with the appropriate conditions set by the legislature as a prerequisite for commencing or maintaining an action. Subject matter jurisdiction is conferred on the [trial court] by the constitution. [Citation omitted.] Whether or not a proper claim has been filed, the [trial court] has jurisdiction of the subject matter.

121 Wis. 2d at 51-52 n.6, 357 N.W.2d at 552 n.6. See, also, *Pritchard v. State*, 163 Ariz. 427, 788 P.2d 1178 (1990) (filing a claim is not a jurisdictional prerequisite for an action against government under tort claims act); *Moran v. Town of Mashpee*, 17 Mass. App. 679, 461 N.E.2d 1231 (1984)

(improper compliance with a governmental tort claims act is not a jurisdictional defect); *Bryant v. Duval County Hosp. Authority*, 502 So. 2d 459 (Fla. App. 1986) (noncompliance with notice requirements of the Florida tort claims act is not a jurisdictional defect).

Consequently, we conclude that compliance with the filing or presentment of claim provision in § 13-905 of the Nebraska Political Subdivisions Tort Claims Act is not a jurisdictional prerequisite for adjudication of a tort claim against a political subdivision. "Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989) (jurisdictional issue). For that reason, as a matter of law, the district court incorrectly determined that it lacked subject matter jurisdiction regarding the suit brought by Millman.

Although the district court assigned lack of subject matter jurisdiction as the reason for dismissal of Millman's action, notwithstanding that the district court actually had jurisdiction to decide Millman's case, the fact remains that the district court dismissed Millman's action. "Where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, the Supreme Court will affirm." *Sommerfeld v. City of Seward*, 221 Neb. 76, 80, 375 N.W.2d 129, 132 (1985). "A correct result will not be reversed merely because a trial court reached that correct result for an incorrect reason." *Travelers Indemnity Co. v. Heim*, 223 Neb. 75, 80, 388 N.W.2d 106, 110 (1986). We must, therefore, decide whether the district court properly dismissed Millman's action.

## A TORT CLAIM: NATURE AND FUNCTION

*A Condition Precedent to Filing Action.*

In *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 366, 417 N.W.2d 757, 764 (1988), we stated:

The Political Subdivisions Tort Claims Act reflects a limited waiver of governmental immunity and prescribes the procedure for maintenance of a suit against a political

subdivision. . . . As a condition precedent to commencement of a suit brought under the Political Subdivisions Tort Claims Act, one must timely file a proper claim with the appropriate political subdivision.

Recognition and acknowledgment that filing or presentment of a claim pursuant to Nebraska's Political Subdivisions Tort Claims Act is a condition precedent to commencement of a tort action against a political subdivision has also been expressed in *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 788, 420 N.W.2d 291, 294 (1988) ("[T]he filing of a notice of claim under the Nebraska Political Subdivisions Tort Claims Act is a condition precedent to the institution of suit against a political subdivision"); in *Utsumi v. City of Grand Island*, 221 Neb. 783, 785-86, 381 N.W.2d 102, 104 (1986) (" 'The notice of claim requirements of the Nebraska Political Subdivisions Tort Claims Act is a condition precedent to the institution of suit against a political subdivision . . .' "); and in *Campbell v. City of Lincoln*, 195 Neb. 703, 712-13, 240 N.W.2d 339, 344 (1976) ("The notice of claim requirements of the Nebraska Political Subdivisions Tort Claims Act is a condition precedent to the institution of suit against a political subdivision"). See, also, *Employers Reins. Corp. v. Santee Pub. Sch. Dist. No. C-5*, 231 Neb. 744, 748, 438 N.W.2d 124, 127 (1989) ("the filing of a notice of claim under the Political Subdivisions Tort Claims Act is a condition precedent to the institution of a suit").

More recently, referring to the Political Subdivisions Tort Claims Act, we stated in *Schmid v. Malcolm Sch. Dist.*, 233 Neb. 580, 582, 447 N.W.2d 20, 21 (1989):

[T]he Tort Claims Act . . . is procedural in nature. The Tort Claims Act is not part of Schmid's cause of action in negligence, but sets out the procedural means through which the district waives its sovereign immunity. Without compliance with the procedural requirements of the Tort Claims Act, the political subdivision's sovereign immunity applies, and not the Tort Claims Act. A plaintiff who sues a political subdivision for negligence and has not complied with the procedures in the Tort Claims Act could not be said to have properly brought an action pursuant to the Act, because it would not apply.

*Function of a Filed Tort Claim.*

The purpose or function of a written tort claim against a political subdivision was explained in *Chicago Lumber, supra* at 368-69, 417 N.W.2d at 766:

> [T]he written claim required by [the Political Subdivisions Tort Claims Act] notifies a political subdivision concerning possible liability for its relatively recent act or omission, provides an opportunity for the political subdivision to investigate and obtain information about its allegedly tortious conduct, and enables the political subdivision to decide whether to pay the claimant's demand or defend the litigation predicated on the claim made.

See, also, *West Omaha Inv. v. S.I.D. No. 48, supra; Campbell v. City of Lincoln, supra.* Thus, the Nebraska Political Subdivisions Tort Claims Act affords a governmental subdivision a pre-action opportunity, or a period before commencement of a lawsuit, to examine the merits of a tort claim and possibly avoid the expense, time, and varied but frequent rigors of litigation to dispose of a claim. See *Chicago Lumber, supra.* Cf. *Hill v. Middletown Bd. of Ed.,* 183 N.J. Super. 36, 443 A.2d 225 (1982) (the purpose of notice under the New Jersey governmental tort claims act is to expedite investigation with the hope of reaching a nonjudicial settlement and to protect accessibility to information about the incident on which the claim is based).

*Notice Requirement and a Cause of Action.*

There exists, however, a problem on account of *Utsumi v. City of Grand Island, supra,* wherein Utsumi's petition failed to allege compliance with the notice requirement of the Political Subdivisions Tort Claims Act. The city filed a demurrer to Utsumi's petition, claiming that the petition did not state sufficient facts to constitute a cause of action against the city. When the demurrer was sustained and Utsumi failed to plead further, the trial court dismissed Utsumi's negligence action against the city. In affirming the dismissal, this court relied on a statement in *Sole v. City of Geneva,* 106 Neb. 879, 881, 184 N.W. 900 (1921):

When a privilege or right is conferred by statute on certain prescribed conditions, and a party desires to avail himself of such privilege or right by bringing action for the enforcement thereof, he must allege and prove all the facts essential to a strict compliance with the prescribed conditions.

The foregoing excerpt from *Sole* is found in *Utsumi, supra*. The predicament engendered by *Utsumi* is twofold. First, *Sole* did not involve a tort claim against a city, but did involve a statutory cause of action for detachment of land from a city pursuant to a special cause of action created by Rev. Stat. § 5090 (1913). *Delozier v. Village of Magnet*, 104 Neb. 765, 178 N.W. 619 (1920), cited in *Utsumi* as support for the excerpt from *Sole* set forth above, also involved the special detachment statute, § 5090, mentioned in *Sole*. The *Sole* court quite correctly concluded that since the cause of action existed by statute, one seeking detachment of land by virtue of the statute must fulfill the statutory prescription for detachment. This leads to the second troublesome aspect of *Utsumi* and its reliance on *Sole*. As noted, *Sole* involved a statutorily created cause of action, whereas *Utsumi* involved a cause of action based on common-law negligence and, therefore, a cause of action which exists independent of any statute.

"A cause of action is judicial protection of one's recognized right or interest, when another, owing a corresponding duty not to invade or violate such right or interest, has caused a breach of that duty." *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 193, 376 N.W.2d 539, 548 (1985); *First Nat. Bank of Omaha v. State*, 230 Neb. 259, 430 N.W.2d 893 (1988); *Ravenna Bank v. Custom Unlimited*, 223 Neb. 540, 391 N.W.2d 557 (1986); *Suhr v. City of Scribner*, 207 Neb. 24, 295 N.W.2d 302 (1980). In reference to a petition, a cause of action means a statement of the subject matter on which a plaintiff claims a right to a remedy. *Muenchau v. Swarts*, 170 Neb. 209, 102 N.W.2d 129 (1960); *Schwank v. County of Platte*, 152 Neb. 273, 40 N.W.2d 863 (1950); *Lincoln Joint Stock Land Bank v. Barnes*, 143 Neb. 58, 8 N.W.2d 545 (1943); *Zelen v. Domestic Industries*, 131 Neb. 123, 267 N.W. 352 (1936); *Myers v. Moore*, 78 Neb. 448, 110 N.W. 989 (1907).

In *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 370, 417 N.W.2d 757, 767 (1988), we acknowledged that "to recover under the Political Subdivisions Tort Claims Act a claimant must prove the four basic elements of negligence," namely, the substantive elements of negligence, which are duty, breach of duty, proximate causation, and damages. See, *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987) (elements of actionable negligence); *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986) (negligence action under Political Subdivisions Tort Claims Act; contributory negligence).

Courts in several other jurisdictions have recognized that filing or presentment of a claim under a governmental tort claims act is a procedural precedent for commencement of a negligence action against a governmental subdivision and that filing or presentment of a claim is not an element in a negligence cause of action against a governmental entity or body. For example, in *Aaron v. City of Tipton*, 218 Ind. 227, 32 N.E.2d 88 (1941), the Supreme Court of Indiana explained the purpose of the written notice provision in Indiana's governmental tort claims act. The court's explanation in *Aaron* coincides with our explanation for the purpose of the notice provision as set forth in *Chicago Lumber, supra*. The *Aaron* court concluded that the notice provision "did not constitute a condition precedent to the liability of the city or to the accrual of the claimant's right against the city," 218 Ind. at 232, 32 N.E.2d at 90, and then more fully explained the rationale underlying the procedural aspect of a notice provision as a condition precedent to commencement of an action:

> Our notice statutes do not purport to set up a condition precedent to the liability of the city, but merely establish a procedural step which was necessary to the remedy of bringing an action to enforce the liability. The city may pay such liability without any notice having been given. If two persons were injured in the same accident caused by the same negligence on the part of the city, one claim might be settled by the city and the other contested. The liability of the city might be identical on the two claims. The only necessity of notice on the contested claim is to enable that

claimant to institute and maintain his action. The notice does not affect the legal or moral obligation of the city to pay for the damages caused by its negligence. Its only purpose is to enable the city to make a prompt investigation as to its liability. The notice does not affect the right, it affects only a remedy of the injured—the remedy of instituting and maintaining an action for the collection of the damages.

. . . Even more clearly is the serving of the notice merely a procedural step in the remedy where the liability is a common-law liability for negligence rather than a statutory liability.

218 Ind. at 235-37, 32 N.E.2d at 91-92.

The procedural principle expressed in *Aaron, supra*, was reexamined and affirmed some 34 years later in *Thompson v. City of Aurora*, 263 Ind. 187, 325 N.E.2d 839 (1975), when the Indiana Supreme Court considered, and reversed, a directed verdict against Thompsons because they alleged, but failed to prove, that written notice of their claim was given to the city, as required by the Indiana governmental tort claims act. The *Thompson* court expressed the following: "As stated in *Aaron*, the notice requirement is not an element of a plaintiff's claim of negligence, but rather a procedural precedent which must be performed prior to commencement of the suit." 263 Ind. at 193-94, 325 N.E.2d at 843.

The Kansas Supreme Court, in *Fuller v. State Highway Comm.*, 140 Kan. 558, 559, 561, 38 P.2d 99, 99-100 (1934), held that the provision for written notice pursuant to the Kansas governmental tort claims act did "not have any relationship to the liability. It is simply something that must be done preliminary to filing suit. . . . The giving of the notice in our statute is not the establishment of particular conditions. It is merely a preliminary step in the bringing of the action."

From the foregoing, it is clear that a negligence action brought under the Political Subdivisions Tort Claims Act has the same elements as a negligence action against a private individual and "to recover under the Political Subdivisions Tort Claims Act a claimant must prove the four basic elements of negligence." *Chicago Lumber Co. v. School Dist. No. 71*, 227

Neb. 355, 370, 417 N.W.2d 757, 767 (1988). See, also, §§ 13-904 and 13-908. See, further, *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986). For that reason, filing or presentment of a claim under the Political Subdivisions Tort Claims Act is neither a condition precedent to a political subdivision's tort liability nor a substantive element for a claimant's recovery in a negligence action against a political subdivision, but, as has been frequently stated by this court, is a condition precedent to commencement of a negligence action against a political subdivision. In retrospect, through *Utsumi v. City of Grand Island*, 221 Neb. 783, 381 N.W.2d 102 (1986), we elevated the procedural requirement of notice under the Political Subdivisions Tort Claims Act to the level of a substantive element in a negligence action against a political subdivision. Hence, any language in *Utsumi* which indicates, explicitly or implicitly, that compliance with the Nebraska Political Subdivisions Tort Claims Act is a substantive element in a negligence cause of action against a political subdivision is expressly disapproved.

## NONCOMPLIANCE WITH NOTICE REQUIREMENT: A DEFENSE

Thus far, we have determined that compliance with the notice requirement of the Political Subdivisions Tort Claims Act is not a jurisdictional prerequisite for a negligence action brought under the act and have also reaffirmed the principle that filing or presenting a claim against a political subdivision is a condition precedent for a claimant's right to commence a tort action against a political subdivision. As we noted in *Schmid v. Malcolm Sch. Dist.*, 233 Neb. 580, 477 N.W.2d 20 (1989), filing or presenting a tort claim against a political subdivision is a procedural matter under the Political Subdivisions Tort Claims Act.

As a matter of procedure, how may a political subdivision raise the issue that a claimant has failed to comply with the filing requirements of the Political Subdivisions Tort Claims Act? As a preface for our discussion about the procedural aspects of filing a claim under the Political Subdivisions Tort Claims Act, we note that filing a claim is the subject of two

parts of Nebraska's Political Subdivisions Tort Claims Act. First, there is the requirement that a claim be filed with the political subdivision. See § 13-905. Second, there is the requirement that a claim be timely filed within the time limit specified in § 13-919(1). Thus, § 13-905 pertains to the actual filing of a claim against a political subdivision, that is, whether in fact a claim was filed in accordance with § 13-905, while § 13-919(1) specifies the time limit for filing a claim and other time limits restrictively defining the period in which a suit may be commenced against a political subdivision.

*Condition Precedent as a Limitation of a Right to Sue.*

How, then, as a matter of procedure, is the issue raised that a claimant-plaintiff has failed to comply with the notice requirement contained in § 13-905 as a condition precedent to the right to sue under the Political Subdivisions Tort Claims Act?

In *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 365, 417 N.W.2d 757, 764 (1988), we stated that a district court has the power to determine whether a plaintiff in a tort action against a political subdivision "was entitled to maintain its action brought under the Political Subdivisions Tort Claims Act." Within the word "entitled," found in the excerpt from *Chicago Lumber, supra*, is a judicial determination whether a claimant in a tort action against a political subdivision has the right to come into court for disposition of the claim.

Concerning a negligence action between private parties, a plaintiff may immediately invoke judicial process to resolve a claim against the defendant and, if successful on the claim, obtain a compensatory remedy. However, as we have repeatedly stated in reference to the Political Subdivisions Tort Claims Act, before a plaintiff may commence a negligence action against a political subdivision, a filed claim against the political subdivision is a condition precedent to commencement of the action. Thus, under the Political Subdivisions Tort Claims Act, a plaintiff does not have immediate and unrestricted access to a court for redress on account of a political subdivision's negligence, but, rather, has a qualified right to commence a negligence action, or, more simply, has a limitation on the right

to commence a tort action against a political subdivision in the form of a precedent filed claim prescribed by § 13-905. From the notice requirement of § 13-905, as a condition for a plaintiff's right to commence a negligence action against a political subdivision, there emerges a correlative right for the political subdivision: the right to an opportunity for investigation of the negligence claim and possible achievement of a settlement to avoid litigation. Thus, a plaintiff's right to sue under the Political Subdivisions Tort Claims Act is, in turn, limited by the political subdivision's right to ascertain the merits and value of the plaintiff's claim.

Several courts which have considered noncompliance with a notice requirement under a governmental tort claims act have concluded that the notice requirement is a limitation on a plaintiff's right to sue under the tort act; for example, see, *Pritchard v. State*, 163 Ariz. 427, 788 P.2d 1178 (1990); *Hill v. Middletown Bd. of Ed.*, 183 N.J. Super. 36, 443 A.2d 225 (1982); *Ferguson v. New Mexico State Highway Com'n*, 99 N.M. 194, 656 P.2d 244 (1982); *Kamani v. Port of Houston Authority*, 702 F.2d 612 (5th Cir. 1983) (construing the Texas Tort Claims Act). As a limitation on a plaintiff's right to commence a negligence action against a political subdivision, compliance with the notice requirement of § 13-905 of the Nebraska Political Subdivisions Tort Claims Act is a procedural precedent to commencement of the negligence action; hence, noncompliance with the notice is a defense to the plaintiff's action. See, *Pritchard v. State, supra*; *Mesolella v. City of Providence*, 508 A.2d 661 (R.I. 1986); *Vasys v. Metropolitan District Commission*, 387 Mass. 51, 438 N.E.2d 836 (1982); *Hill v. Middletown Bd. of Ed., supra*; *City of Wilmington v. Spencer*, 391 A.2d 199 (Del. 1978); *Thompson v. City of Aurora*, 263 Ind. 197, 325 N.E.2d 839 (1975); *Yurechko v. Allegheny Co.*, 430 Pa. 325, 243 A.2d 372 (1968); *Kamani v. Port of Houston Authority, supra*; *Bryant v. Duval County Hosp. Authority*, 502 So. 2d 459 (Fla. App. 1986); *Ferguson v. New Mexico State Highway Com'n, supra*.

Although noncompliance with the notice requirement affords a political subdivision a defense to a negligence action under the Nebraska Political Subdivisions Tort Claims Act, a

general denial in the political subdivision's answer does not raise the issue of noncompliance, which must be raised as an affirmative defense specifically expressing the plaintiff's noncompliance with the notice requirement of § 13-905 of the Political Subdivisions Tort Claims Act. See, *Pritchard v. State, supra* (affirmative defense); *Mesolella v. City of Providence, supra* (general denial is insufficient to raise defense of noncompliance; affirmative defense must be specifically expressed); *Vasys v. Metropolitan District Commission, supra* (general denial is insufficient to raise defense of noncompliance; affirmative defense must be specifically expressed); *Hill v. Middletown Bd. of Ed., supra* (affirmative defense); *City of Wilmington v. Spencer, supra* (affirmative defense); *Thompson v. City of Aurora, supra* (general denial is insufficient to raise defense of noncompliance; affirmative defense must be specifically expressed); *Yurechko v. Allegheny Co., supra* (affirmative defense); *Bryant v. Duval County Hosp. Authority, supra* (general denial is insufficient to raise defense of noncompliance; affirmative defense must be specifically expressed). Unless a political subdivision pleads the affirmative defense of noncompliance with the notice requirement of § 13-905, the political subdivision waives the defense of noncompliance with the notice requirement. See, *Mesolella v. City of Providence, supra*; *Hill v. Middletown Bd. of Ed., supra*; *City of Wilmington v. Spencer, supra*.

Some courts have viewed the "right to come into court" as an aspect of a plaintiff's capacity to sue. See, *Keehn v. Joseph C. Mackey and Co.*, 420 So. 2d 398 (Fla. App. 1982); *Friendly Village Community Assn., Inc. v. Silva & Hill Constr. Co.*, 31 Cal. App. 3d 220, 107 Cal. Rptr. 123 (1973); *Flour Mills of America, Inc. v. Pace*, 75 F.R.D. 676 (E.D. Okla. 1977). If the "right to come into court" is procedurally equated with a plaintiff's capacity to commence a suit, Nebraska has a procedure to raise the issue of a plaintiff's capacity to sue. Neb. Rev. Stat. § 25-806(2) (Reissue 1989) provides that a defendant may demur to a petition when the petition facially reflects that "the plaintiff has not legal capacity to sue." Neb. Rev. Stat. § 25-808 (Reissue 1989) provides that if a plaintiff's lack of capacity is not apparent from the petition,

the objection may be taken by answer, and if no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court, and that the petition does not state facts sufficient to constitute a cause of action.

In *Hinze v. School Dist. No. 34*, 179 Neb. 69, 71, 136 N.W.2d 434, 436 (1965), this court stated that "want of legal capacity to sue is waived unless raised by demurrer or answer." See, also, *Ebberson v. School Dist. No. 64*, 180 Neb. 119, 141 N.W.2d 452 (1966). See, further, *Kuncl v. Kuncl*, 99 Neb. 390, 156 N.W. 772 (1916), wherein the defendant failed to plead that the plaintiff-executrix lacked capacity to maintain an action and, on appeal, contended that the executrix could not maintain the action in which the executrix obtained a judgment from which the appeal was taken. However, this court stated in *Kuncl* at 391, 156 N.W. at 773:

> The judgment is assailed on the ground that the executrix, as such, has no right to maintain the suit . . . . The defense that an executrix cannot maintain an action to enforce, in favor of the estate of testator, a resulting trust against a defendant to whom the legal title to realty in controversy had been conveyed is waived unless interposed by demurrer or answer. [Citations omitted.]

If a political subdivision, by an appropriately specific allegation in a demurrer or answer, raises the issue of the plaintiff's noncompliance with the notice requirement of § 13-905 of the Political Subdivisions Tort Claims Act, the plaintiff has the burden to show compliance with the notice requirement. See *Thompson v. City of Aurora*, 263 Ind. 197, 325 N.E.2d 839 (1975).

The procedures set forth above lend themselves to an expeditious disposition of litigation under the Political Subdivisions Tort Claims Act. For example, if a plaintiff in a tort action against a political subdivision fails to plead compliance with the filing requirement of § 13-905, availability of a demurrer, asserting that a claim has not been filed with the political subdivision and thereby raising the notice issue, affords the court and a political subdivision an opportunity to

speedily resolve the question whether a notice was actually filed, a matter collateral to the merits of the plaintiff's claim, and avoid a lengthy and perhaps costly trial on the merits of the negligence claim. Such economy in time will be welcomed by courts for the reduction of docket congestion. Political subdivisions will undoubtedly appreciate the decreased cost of defending tort litigation, including elimination of extensive and expensive discovery for a trial which need not occur. On the other hand, if a plaintiff pleads that a claim has been filed in compliance with § 13-905, the political subdivision may still preserve the notice issue, that is, whether the plaintiff did in fact file a claim, by asserting the plaintiff's noncompliance with § 13-905 as an affirmative defense specifically alleged in the political subdivision's answer. In this manner, the question whether a plaintiff has in fact filed a complaint in compliance with § 13-905 may be properly raised and preserved for disposition in a summary judgment. See *Pritchard v. State*, 163 Ariz. 427, 788 P.2d 1178 (1990) (summary judgment is a proper procedure to determine the question whether a plaintiff has complied with the claim-filing requirement of a tort claims act). If there were no compliance with the notice requirement, notwithstanding the allegation in Millman's pleading, the present appeal and the extensive use of discovery displayed in this case supply unimpeachable evidence proving the validity of the procedure which we have outlined above. Moreover, the information which might be provided in the Duncan claim's cursory content contained within the four corners of some document filed with the county pales in the reality of comparison with the information actually obtained by the county through the proceedings. When Butler County failed to assert its defensive statutory right to the pre-action opportunity available to a political subdivision, the county rendered the notice requirement immaterial as an issue and eliminated the necessity of proof that Millman had complied with the notice requirement as a condition for commencement of the lawsuit based on the county's alleged negligence in Duncan's death.

*Statute of Limitations.*

In *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb.

355, 364-65, 417 N.W.2d 757, 763 (1988), we stated: "[T]he statute of limitations on filing a claim or suit for a political subdivision's tortious conduct is exclusively prescribed by § 23-2416 of the Political Subdivisions Tort Claims Act." Section 23-2416 (Reissue 1983), mentioned in *Chicago Lumber* as the statute of limitations pertaining to the Nebraska Political Subdivisions Tort Claims Act and as amended in 1984, has been replaced, without statutory alteration, by § 13-919, which provides:

> (1) Every claim against a political subdivision permitted under this act shall be forever barred, unless within one year after such claim accrued, the claim is made in writing to the governing body. . . .
>
> . . . .
>
> (5) This section and section 25-213 shall be the only statutes of limitations applicable to tort claims as defined in this act.

See, also, *Ragland v. Norris P. P. Dist.*, 208 Neb. 492, 304 N.W.2d 55 (1981) (§ 23-2416(1), now § 13-919(1), is a statute of limitations).

A statute of limitations does not create or extinguish a right, but only places a limitation on a remedy which may be tolled or waived. *Dept. of Revenue v. Mumma Bros. Drilling*, 173 Ind. App. 487, 364 N.E.2d 167 (1977). See, also, *Stock v. Meissner*, 217 Neb. 56, 348 N.W.2d 426 (1984) (statutes of limitations merely affect procedure by which existing rights may be enforced); *Cedars Corp. v. Swoboda*, 210 Neb. 180, 313 N.W.2d 276 (1981); *Dishon v. Oliver*, 402 A.2d 1292 (Me. 1979) (statutes of limitations are laws of procedure and operate only on a remedy, not on a substantive right). "A defendant alleging the statute of limitations as an affirmative defense has the burden to prove such defense." *League v. Vanice*, 221 Neb. 34, 42, 374 N.W.2d 849, 854 (1985); *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988); *Van Burg v. Van Engen*, 76 Neb. 816, 107 N.W. 1006 (1906). If there is no evidence on the issue of a statute of limitations, the statute of limitations is not a submissible issue for the fact finder. See *Rucker v. Ward*, 131 Neb. 25, 267 N.W. 191 (1936).

Thus, the filing or presentment provision in § 13-919(1) bars

a plaintiff's action and precludes a remedy or relief only if the claim is not filed or presented within the statutorily specified time, and operates in a manner identical to the remainder of § 13-919(1) concerning the time limits for commencement of a tort action against a governmental subdivision.

## TRIAL OF THE WRONGFUL DEATH CLAIM

Millman's petition on which the case was tried contained the allegation that a claim had been filed with Butler County in compliance with the Political Subdivisions Tort Claims Act. However, in its pleadings, Butler County failed to affirmatively raise the issue of noncompliance with the notice requirement prescribed in § 13-905 of the Political Subdivisions Tort Claims Act. Therefore, Butler County waived any question concerning the notice requirement of the Political Subdivisions Tort Claims Act in relation to Millman's action against the county. Additionally, as we have discussed above, § 13-919(1), which bars a suit against a political subdivision in the absence of a claim filed within 1 year after accrual of the negligence cause of action, is a statute of limitations. In its answer the county affirmatively alleged Millman's "cause of action is barred by the statute of limitations." By pleading the statute of limitations as an affirmative defense, Butler County took upon itself the burden to prove that the Duncan claim was not filed within 1 year after Duncan's death. Yet, there is no evidence that the Duncan claim was not timely filed with the county. In that posture, the statute of limitations contained in § 13-919(1) was not an issue submissible to the court as the fact finder in the negligence action against Butler County. Consequently, the district court could not have properly concluded that absence of a timely filed claim barred prosecution of the action against Butler County for the wrongful death of Christopher T. Duncan.

## CONCLUSION

Therefore, since the district court had jurisdiction to adjudicate the negligence claim for Duncan's death and since Butler County did not, as a procedural matter, affirmatively raise the issue of noncompliance with the notice requirement of the Political Subdivisions Tort Claims Act or establish a defense

under the statute of limitations, the district court should have proceeded to dispose of the Duncan claim on its merits. Also, since Millman, under the circumstances, was not required to prove compliance with the notice requirement of the Political Subdivisions Tort Claims Act, the district court's refusal to allow Millman to withdraw his rest and present evidence concerning compliance with the notice requirement is not a question which we need to address, inasmuch as that aspect of the proceedings is not an actual issue.

The district court erred by dismissing Millman's action against Butler County. For that reason, we reverse the judgment of the district court and remand this matter to the district court with direction to proceed to an adjudication of the merits of the Duncan wrongful death claim prosecuted by Millman against Butler County.

REVERSED AND REMANDED WITH DIRECTION.

FAHRNBRUCH, J., dissenting.

Contrary to the majority's opinion, there can be no question but that a claim under the Nebraska Political Subdivisions Tort Claims Act is a statutory cause of action. Under common law, the king (sovereign) could do no wrong, and therefore there was no cause of action for common-law negligence against the sovereign. See *Brown v. City of Omaha*, 183 Neb. 430, 160 N.W.2d 805 (1968). A county, being a political subdivision of the state, having subordinate powers of sovereignty, was not liable at common law for negligence in maintaining a public road or bridge. *Stitzel v. Hitchcock County*, 139 Neb. 700, 298 N.W. 555 (1941). "[C]ounties are not liable to individuals for damages on account of the negligent or tortious acts of their officers or servants *unless made so by statute.*" (Emphasis supplied.) *Id.* at 703, 298 N.W. at 557.

In 1969, the Legislature enacted the Political Subdivisions Tort Claims Act in controversion of the common law. In doing so, the Legislature, in what is now known as Neb. Rev. Stat. § 13-902 (Reissue 1987), declared:

> [N]o political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and . . . *no suit shall be maintained against such political subdivision on any tort claim except to the extent, and*

*only to the extent, provided by this act.* The Legislature further declares that it is its intent and purpose through this enactment to provide uniform procedures for the bringing of tort claims against all political subdivisions . . . and that the procedures provided by this act shall be used to the exclusion of all others.

(Emphasis supplied.)

Neb. Rev. Stat. § 13-905 (Reissue 1987) provides that all tort claims must be filed and acted upon by the political subdivision against which the claim is made. Neb. Rev. Stat. § 13-906 (Reissue 1987) provides:

No suit shall be permitted under this act unless the governing body of the political subdivision has made final disposition of the claim, except that if the governing body does not make final disposition of a claim within six months after it is filed, the claimant may, by notice in writing, withdraw the claim from consideration of the governing body and begin suit under this act.

In *Utsumi v. City of Grand Island*, 221 Neb. 783, 785-86, 381 N.W.2d 102, 104 (1986), this court held that " '[t]he notice of claim requirements of the Nebraska Political Subdivisions Tort Claims Act is a condition precedent to the institution of suit against a political subdivision . . . .' " We also declared:

"When a privilege or right is conferred by statute on certain prescribed conditions, and a party desires to avail himself of such privilege or right by bringing action for the enforcement thereof, *he must allege and prove* all the facts essential to a strict compliance with the prescribed conditions."

(Emphasis supplied.) *Id.* at 786, 381 N.W.2d at 104 (quoting *Sole v. City of Geneva*, 106 Neb. 879, 184 N.W. 900 (1921)).

*Utsumi, supra,* placed the burden upon a plaintiff to allege and prove compliance with the provisions of the Political Subdivisions Tort Claims Act, and that is where the burden should be. In today's opinion, the majority has shifted the burden of raising the issue of compliance with the Political Subdivisions Tort Claims Act to the defendant political subdivision.

I see no reason to differentiate between tort claims and

contract claims when pursued against a county. Yet, today's decision does just that. A petition for the allowance of a claim against a county which is subject to the provisions of Neb. Rev. Stat. § 23-135 (Reissue 1987) is demurrable unless it shows on its face that the claim was filed with the county clerk within the statutory time. *Jackson v. County of Douglas*, 223 Neb. 65, 388 N.W.2d 64 (1986).

The majority has improvidently departed from the rule adhered to in *Utsumi, supra*, and *Jackson, supra*.

WHITE and CAPORALE, JJ., join in this dissent.