WALLACE JOSEPH BIG CROW, FATHER OF DECEASED AND AS ADMINISTRATOR OF THE ESTATE OF RICHARD LEE BIG CROW, DECEASED, APPELLANT, V. CITY OF RUSHVILLE, APPELLEE.
654 N.W.2d 383

Filed December 10, 2002.    No. A-01-1055.

Rena M. Atchison, of Langley-Atchison Law Office, for appellant.

Terrance O. Waite and Keith A. Harvat, of Waite & McWha, for appellee.

SIEVERS, INBODY, and MOORE, Judges.

SIEVERS, Judge.

Wallace Joseph Big Crow (Big Crow) filed a negligence suit against the City of Rushville, Nebraska (the City), after his son, Richard Lee Big Crow (Richard), was killed in a motor vehicle-pedestrian accident. The district court for Sheridan County entered summary judgment for the City because Big Crow did not strictly comply with procedural requirements of the Nebraska Political Subdivisions Tort Claims Act (the Act).

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of November 1, 1998, between approximately 1:45 and 2:34 a.m., Richard was killed on Highway 87 in a motor vehicle-pedestrian accident. He was found lying on Highway 87, approximately one-half mile from the City. The autopsy report showed that Richard had a blood alcohol level of .314 grams per 100 milliliters of blood.

Big Crow, the administrator of Richard's estate, served written notice of a claim against the City pursuant to the Act on Chief Paul Anderson of the Rushville Police Department and Sharon Michaelson, secretary of the City, on October 26 and 27, 1999, respectively. The notice stated that "upon information and

belief," Richard was last seen alive by law enforcement officers from the Rushville Police Department. According to the notice, signed by a South Dakota lawyer who indicated that his law firm was representing Big Crow,

> [i]t is the position of Richard Lee Big Crow's family that if he was intoxicated, as indicated in the autopsy report, he should have been picked up and placed in a treatment center, detoxification center, or some other safe place in order to prevent him from harming himself, or allowing others to harm him.

The notice demanded $350,000 to settle the matter. The City did not respond to the claim.

On April 21, 2000, Big Crow filed suit under the Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997 & Cum. Supp. 2002), in the district court for Sheridan County. The operative petition, an amended petition filed on July 24, states two causes of action: (1) negligence in training and supervision of Rushville police officers and (2) failure of law enforcement officers to act. The petition alleges that Rushville law enforcement officers came into contact with Richard on the night of his death, but that despite their duty to protect him, they failed to do so.

On April 30, 2001, the City filed a motion for summary judgment. The motion cites no specific grounds for summary judgment other than that "there is no genuine issue as to any material fact regarding issues raised in [Big Crow]'s Amended Petition and that the [City] is therefore entitled to judgment as a matter of law."

Big Crow, by another South Dakota lawyer, filed a "response" and subsequently a "final response" to the summary judgment motion. These pleadings are actually in the nature of briefs arguing Big Crow's position before and after the summary judgment hearing, rather than recognized pleadings under Nebraska rules of practice and procedure, but they are part of our transcript. The "response," filed before the hearing, says:

> Pursuant to conversations with [the City's] counsel . . . the basis of the Motion . . . is limited to the legal issue of sufficient notice to the City . . . . According to discussions with [the City's counsel], no factual issues will be presented on the same. . . . [T]he only issue addressed in this

brief and the only issue [Big Crow] is agreeing to resolve regarding summary judgment is notice to the City . . . .

The "final response" addresses Big Crow's failure to withdraw the claim from the City before initiating suit in the district court, as required by § 13-906, which provides:

No suit shall be permitted under the . . . Act . . . unless the governing body of the political subdivision has made final disposition of the claim, except that if the governing body does not make final disposition of a claim within six months after it is filed, the claimant may, by notice in writing, withdraw the claim from consideration of the governing body and begin suit . . . .

It is undisputed that Big Crow filed suit 7 days prior to the end of the 6-month period prescribed in § 13-906, without first withdrawing his claim from the City.

Big Crow's "final response" argues that noncompliance with the notice requirements of the Act is an affirmative defense which must be specifically pled in an answer or a demurrer, which the City had not done.

After citing Nebraska case law requiring only "substantial compliance" with the notice provisions of the Act, the trial court found that "[i]f substantial compliance were the rule with regard to not only notice, but also every other aspect of the . . . Act, then the require[e]ments of the [A]ct become only a rough skeleton upon which the courts will hang flesh as they see fit from time to time." The court therefore sustained the City's motion for summary judgment, saying, "A line has to be drawn somewhere." Big Crow appeals.

## ASSIGNMENTS OF ERROR

Big Crow alleges that the trial court erred in allowing the affirmative defense of noncompliance with the Act even though the City did not raise the defense in its answer, in determining that the action is barred, and in ruling on the summary judgment motion without allowing discovery of and considering additional evidence.

## STANDARD OF REVIEW

There are no disputed facts, and the case involves application of the Act. Interpretation of a statute presents a question of law,

in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Tighe v. Cedar Lawn, Inc.*, 11 Neb. App. 250, 649 N.W.2d 520 (2002).

## ANALYSIS

### *Affirmative Defenses Must Be Pled.*

Big Crow argues that because the City did not raise noncompliance with the Act in its answer, the City waived any such defense. Thus, the first step in our analysis is to determine whether noncompliance with § 13-906 of the Act is a defense which must be specifically alleged. This necessarily involves examination of the Act's notice requirements.

In *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990), the court held that compliance with the filing or presentment of claim provision of the Act is not a jurisdictional prerequisite for adjudication of a tort claim against a political subdivision. Instead, such filing or presentment is a condition precedent to commencement of an action against that subdivision. *Id.* The court then held:

> Although noncompliance with the notice requirement affords a political subdivision a defense to a negligence action under the . . . Act, a general denial in the political subdivision's answer does not raise the issue of noncompliance, which must be raised as an affirmative defense . specifically expressing the plaintiff's noncompliance with the notice requirement of § 13-905 of the . . . Act.

*Id.* at 931-32, 458 N.W.2d at 217.

*Millman* dealt specifically with § 13-905, the provision of the Act which details the content and filing requirements for notice of a claim against a political subdivision. The *Millman* court concluded that § 13-905 serves " 'to enable the city to make a prompt investigation as to its liability. The notice . . . affects only . . . the remedy of instituting and maintaining an action for the collection of damages.' " 235 Neb. at 928, 458 N.W.2d at 215. In addition, the court found that the notice provision permits a political subdivision to investigate its liability and possibly settle the claim to avoid litigation.

As the 6-month waiting period prescribed in § 13-906 clearly serves the same purpose as the notice provisions of § 13-905—to give a political subdivision an opportunity to investigate and dispose of a claim, if so inclined, without litigation—we find that extension of the holding in *Millman* to § 13-906 is only logical. The procedural requirements of § 13-906 are not jurisdictional prerequisites. Instead, they are conditions precedent to a plaintiff's right to bring suit under the Act. Noncompliance with § 13-906 must therefore be pled as an affirmative defense.

## *Did City Raise Defense of Noncompliance?*

The City argues in its brief that it sufficiently raised the defense of noncompliance in its answer. We quote those portions of the City's answer which are claimed to allege noncompliance:

12. [The City] [a]dmits that [Big Crow] has provided notice of this claim by certified mail . . . .

13. [The City] [a]dmits that the [City] did not make final disposition of [Big Crow]'s claim.

14. [The City] [g]enerally denies each and every other remaining allegation . . . .

. . . .

18. [The City] [s]pecifically alleges that [Big Crow]'s Amended Petition fails to state a cause of action against [the City].

In summary, the City admits that it did not make final disposition of the claim, asserts a general denial, and alleges that Big Crow stated no cause of action against it. Nothing in the City's answer alleges a failure to withdraw the claim after the passage of 6 months before filing suit or that the suit was filed prematurely. To raise the affirmative defense of noncompliance, a general denial is insufficient. See *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990). Because *Millman* also holds that the Act's procedural requirements affect only the right to sue, not the subdivision's tort liability or the substantive elements for the plaintiff's recovery, alleging that Big Crow had not stated a cause of action does not adequately raise the specific defense of noncompliance with the Act.

Further, Big Crow is not required to wait for the City to "finally" dispose of the claim. He must wait only 6 months, after which he can withdraw the claim and file suit. We find that the City did not raise the affirmative defense of noncompliance in its answer, but there are other considerations.

■ In the absence of a showing of prejudice, an affirmative defense may be raised for the first time on a motion for summary judgment. *Rivera v. Anaya*, 726 F.2d 564 (9th Cir. 1984). See, also, *DeCosta Sporting Goods, Inc. v. Kirkland*, 210 Neb. 815, 316 N.W.2d 772 (1982) (holding that purpose of placing affirmative defense in answer is to give opposing party opportunity to meet defense and that there is no distinction between defendant's filing answer raising affirmative defense followed by motion for summary judgment and defendant's inclusion of defense in motion itself). Nothing in the City's summary judgment motion directly or indirectly raises the affirmative defense of noncompliance with § 13-906. But, the record shows that noncompliance was the sole issue on summary judgment, and Big Crow and his counsel were clearly aware of that fact.

■ Big Crow's pleading entitled "Plaintiff's Response to Defendant's Motion for Summary Judgment" clearly stated his understanding that noncompliance—and only noncompliance—would be addressed on summary judgment. As held in *DeCosta Sporting Goods, Inc., supra*, requirements for pleading an affirmative defense are designed to give the opposing party notice so that it may meet the defense. Big Crow knew, by his admission in his pleading, that the City was defending at this stage of the proceeding on the basis of noncompliance with the Act. We hold that the requirement that an affirmative defense be specifically alleged can be waived, particularly as here, when the opposing party has agreed that the defense is "on the table" in the summary judgment proceedings. Our holding is specifically premised upon the pleading filed by Big Crow which shows that he had notice of the noncompliance defense which specific pleading is designed to provide. See, *Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998) (statute of limitations defense waived unless asserted by answer or demurrer); *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991). If a defendant can waive a defense by not asserting it, it logically follows that a

plaintiff can waive the right to have a defense specifically pled. Consequently, we hold that Big Crow waived any right to avoid, by relying on the City's failure to specifically plead the defense, the defense of noncompliance with the Act. This takes us to the determinative issue—Big Crow's noncompliance with the Act.

*Noncompliance With § 13-906.*

It is undisputed that Big Crow did not withdraw his claim from the City and that he filed suit in the district court 7 days prior to the end of the 6-month period which § 13-906 gives a political subdivision to make a final disposition of a claim. The district court found that Big Crow must strictly comply with § 13-906 and dismissed the action.

The Nebraska Supreme Court held in *Malzahn v. Transit Authority*, 244 Neb. 425, 507 N.W.2d 289 (1993), that absent any consideration of the statute of limitations, filing suit is substantial compliance with the terms of § 13-906 and equates with notice of withdrawal of a claim from consideration. Thus, by filing a district court suit, Big Crow can be considered to have withdrawn his claim. We now turn to whether Big Crow lost his right to sue under the Act by instituting suit 7 days before the 6-month waiting period expired.

Case law suggests that under the Act, substantial compliance with procedural requirements is generally sufficient. For instance, in *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 368-69, 417 N.W.2d 757, 766 (1988), the Nebraska Supreme Court held as follows with regard to the statutory predecessor to § 13-905, which is the Act's notice provision:

> [T]he written claim required by [the Act's notice provision] notifies a political subdivision concerning possible liability for its relatively recent act or omission, provides an opportunity for the political subdivision to investigate and obtain information about its allegedly tortious conduct, and enables the political subdivision to decide whether to pay the claimant's demand or defend [against] the litigation predicated on the claim made. . . .
>
> We hold, therefore, that the notice requirements for a claim filed pursuant to the . . . Act are liberally construed so that one with a meritorious claim may not be denied

relief as the result of some technical noncompliance with the formal prescriptions of the act. . . . Therefore, substantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with [the Act's notice provision], when the lack of compliance has caused no prejudice to the political subdivision.

As was said in *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990), § 13-905 provides a governmental subdivision a period of time before commencement of a lawsuit to examine the merits of a tort claim and possibly avoid the expense and other difficulties associated with litigation by settling the claim.

■ Clearly, § 13-906 serves virtually the same purpose as § 13-905. We therefore hold, in accordance with the liberal construction doctrine from *Chicago Lumber Co., supra*, that substantial compliance with § 13-906 is sufficient when a lack of precise compliance has caused no prejudice to the political subdivision. Filing suit 7 days before the 6-month period has run is clearly substantial compliance.

The City argues in its brief that because Big Crow withdrew the claim 7 days early, its "opportunity to investigate and obtain information about its allegedly tortious conduct was ended abruptly and it was left with no choice but to defend [against] the litigation." Brief for appellee at 12. That naked conclusion is without evidentiary support, and as the moving party, the City would have the burden to prove it was prejudiced. See *Smeal v. Olson*, 263 Neb. 900, 644 N.W.2d 550 (2002). As a practical matter, the City's ability to investigate or settle the claim could hardly be prejudiced by the filing of suit 7 days early, given that it had 30 days to respond to the petition. See Neb. Rev. Stat. § 25-821 (Reissue 1995). In addition, although Big Crow filed suit on April 21, 2000, the City was not served notice of the suit until May 5, by which time the statutory 6-month period had run. The City's argument that it was prejudiced is not viable because the time which it had to make its decision to settle or litigate was unaffected given that the City was unaware of the suit and certainly was not compelled to act on the suit until May 5. Thus, lacking proof in the record of any prejudice to the City, we hold that substantial compliance with § 13-906 is sufficient.

## CONCLUSION

Viewing the evidence in the light most favorable to the City, we find that Big Crow substantially complied with § 13-906 and that such compliance was sufficient on these facts. We therefore reverse the district court's decision and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.